**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Patricia Lynn OPAGER,
Defendant-Appellant.**

No. 77–5710.

United States Court of Appeals,
Fifth Circuit.

Feb. 14, 1979.

Edgar Miller, Miami, Fla., Samuel L. Bare, III, Coral Gables, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., James E. McDonald, Linda Collins Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, GODBOLD and FAY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

On February 23, 1977, appellant Patricia Lynn Opager made the regrettable mistake of selling a pound of 90.4% pure cocaine to three buyers, two of whom happened to be law enforcement officers, and the third a government informant and acquaintance of Opager. As a result of this incident, Opager was convicted by a jury of knowingly and intentionally possessing cocaine with the intent to distribute and knowingly and intentionally distributing cocaine in violation of 21 U.S.C.A. § 841(a)(1). She was sentenced to serve two concurrent sentences of fifty-four months imprisonment, with a three year special parole term.

On this appeal, Opager makes four arguments. (1) The trial court should have found entrapment as a matter of law. (2) The trial court improperly limited both her direct examination of certain defense witnesses and her cross-examination of the government's confidential informant.[1] (3) The trial court erroneously excluded certain business records that would have refuted part of the informant's testimony. (4) And, finally, the government failed to obey a court order requiring the government to disclose the whereabouts of the identified informant. We find that claims (3) and (4) are sufficient to warrant reversal of Opager's conviction.

At her trial, Opager attempted to establish an entrapment defense. Opager took the stand, testifying that she had never sold cocaine before and that she was pressured into this sale by the informant, Phillip Posner, and the two police officers. In turn, Posner testified to show Opager's "predisposition" to sell cocaine. He stated that he had observed her engage in cocaine transactions in the past. On cross-examination, Posner explained that he had worked at a beauty salon [the Clipper] with defendant in 1974 and again in 1976 and that during both times he had seen her use and sell cocaine. To impeach Posner's testimony, Opager presented five witnesses to attack Posner's character. By questioning witnesses and by attempting to offer into evidence business records from the beauty salon,[2] she also sought to prove that she and Posner had not worked together in 1974.

The District Court ruled that the records were inadmissible under F.R.Evid. 608(b) as extrinsic evidence of a specific instance of conduct introduced to discredit the witness's testimony.[3]

### Applicability of F.R.Evid. 608(b)

The District Court erred in applying F.R.Evid. 608(b) to determine the admissibility of the business records. The application of Rule 608(b) to exclude extrinsic evidence of a witness's conduct is limited to instances where the evidence is introduced to show a witness's general character for truthfulness. The purpose of such evidence is to show that if a person possesses "certain inadequate character traits—as evidenced in a variety of ways including that he has acted in a particular way—he is more prone than a person whose character, in these respects, is good, to testify untruthfully." 3 Weinstein, Evidence ¶ 608[01].

In this case, we are convinced that the records were not offered for such a purpose. The documents show—and would permit the jury to find—that, contrary to Posner's testimony, Posner and Opager did not work together in 1974 and that therefore Posner did not witness any of the drug transactions he described as occurring at that time. Thus, the records do more than indicate Posner's capacity to lie, about which five witnesses had testified. Instead, as Opager's counsel strenuously argued at trial, *the records were introduced to disprove a specific fact material to Opager's defense.*

---

1. Because of our disposition of the other issues raised in this appeal, it is unnecessary to rule on the first two claims. We do, however, wish to remind the Court of the traditional policy favoring a broad scope of cross-examination in criminal cases. *See, e. g., United States v. Mayer*, 5 Cir., 1971, 556 F.2d 245.

2. The documentary evidence consisted of cancelled checks, appointment books, various tax forms, and other business records of the beauty salon.

3. Rule 608(b) provides in pertinent part:
   (b) **Specific instances of conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
   Although the District Court refused to admit the records, the Court did indicate that it would accept into evidence two cancelled checks from the beauty salon to show when Opager started work there. Record at 375. The Record does not specify which checks these were. They apparently were not offered into evidence.

The District Court's finding that such evidence merely went to the witness's character for truthfulness is unsupported by the trial record.[4]

■ We consider Rule 608(b) to be inapplicable in determining the admissibility of relevant evidence introduced to contradict a witness's testimony as to a material issue. So long as otherwise competent, such evidence is admissible. McCormick, Evidence § 47 (2d ed. 1972); 3A Wigmore, Evidence §§ 1000–1005 (Chadbourn rev. 1970). This was long the rule in this Circuit prior to the enactment of the Federal Rules of Evidence. See, e. g., United States v. Dalton, 5 Cir., 1972, 465 F.2d 32; United States v. Halperin, 5 Cir., 1971, 441 F.2d 612.[5] We find no reason to reach a different result today. Accord, United States v. Batts, 9 Cir., 1977, 558 F.2d 513; United States v. Brown, 8 Cir., 1977, 547 F.2d 438, cert. denied, 430 U.S. 937, 97 S.Ct. 1566, 51 L.Ed.2d 784.

In making this determination, we find helpful the Ninth Circuit's opinion in United States v. Batts, 558 F.2d at 513. In that case, the defendant on cross-examination testified that he had no knowledge of cocaine or its uses. To rebut this testimony, the trial court allowed the government to introduce evidence showing that the defendant had in fact recently sold a large amount of cocaine to an undercover agent. The Court observed that the case presented a "confrontation" between Rule 608(b) and the basic purpose of the federal rules as evidenced by F.R.Evid. 102.[6] Balancing these two interests, the Court held that in this case Rule 608(b) did not bar the admission of such evidence:

> We believe that the ultimate purpose of the rules of evidence should not be lost by a rigid, blind application of a single rule of evidence. Individual rules of evidence, in this instance Rule 608(b), should not be read in isolation, when to do so destroys the purpose of ascertaining the truth. This is especially so when a witness directly contradicts the relevant evidence which Rule 608(b) seeks to exclude.

\* \* \* \* \* \*

> By admitting the rebuttal evidence, the trial court merely completed the picture as to appellant's true involvement and knowledge in the drug world and thereby corrected a distorted view of appellant's testimony.

Record at 375, 377.

---

4. The following colloquy between the court and the defense attorney clearly indicates that the court misapprehended the purpose behind the offer of the records:

> THE COURT: I think it's excluded under 608(b) extrinsic evidence.
> MR. DRESNICK: Your Honor, I'm not trying to bring it in under 608, as evidence of character and conduct. I am trying to bring it in as a relevant issue, \* \* \* it's of definite relevance to the issue of entrapment. He testified that he was—
> THE COURT: It appears that is really not what you are trying to bring it in for, Mr. Dresnick. You are bringing it in on his credibility which is excluded under 608.

\* \* \* \* \* \*

> MR. DRESNICK: I don't think it comes under this rule. I think it comes under the rule of just general relevance. That rule [608(b)] is evidence of character and conviction. That's not what I'm trying to bring it in under. I'm trying to show by it that he is not telling the truth, which comes under impeachment. I'm not trying to introduce it as evidence of character.
> THE COURT: I have ruled on it. That's it unless you've got something new.

5. In Halperin, this Court stated the rule as follows:

> A witness may be contradicted on a material point by the testimony of other witnesses showing a contrary state of facts, in order to show that his statements were false and thus impeach his credibility. It is proper to admit evidence of any acts or circumstances which are inconsistent with the relevant testimony of the witness. Any evidence, otherwise competent, which in any respect tends to contradict the witness as to a material fact, is admissible for this purpose.

441 F.2d at 617.

6. Purpose and Construction

> These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.

F.R.Evid. 102.

*Id.* at 517, 518. Similarly, we believe that Rule 608(b) should not stand as a bar to the admission of evidence introduced to contradict, and which the jury might find disproves, a witness's testimony as to a material issue of the case.

The fact that the business records might have the incidental effect of proving Posner a liar does not affect their admissibility as relevant evidence. In countless cases where facts are in dispute, one party may be able overwhelmingly to disprove the testimony of a prior witness. To exclude under Rule 608(b) the latter otherwise relevant evidence, as the government would have us do today, would completely divorce legal proceedings from the truth seeking process.

■ That the payroll records are relevant evidence is unmistakable. The Federal Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." F.R.Evid. 401. Posner's testimony that he saw Opager deal in cocaine in 1974 was a factor in establishing Opager's criminal "predisposition," itself a matter clearly of consequence to her case. Hence, the payroll records, "as indicative that a fact in issue did or did not exist," were clearly relevant. *United States v. Allison,* 5 Cir., 1973, 474 F.2d 286, 289, *cert. denied,* 419 U.S. 851, 95 S.Ct. 91, 42 L.Ed.2d 82.

■ We see no reason why this relevant evidence should not have been admitted. *See* F.R.Evid. 402.[7] We find unconvincing the government's suggestion that the records were inadmissible due to Opager's failure to comply with the Standing Discovery Order.[8] Record at 372. For reasons discussed more fully below, we conclude that any failure to produce these records in a timely fashion is excused by the government's nondisclosure of the identified informant's whereabouts. Had Opager been supplied with this information, she might have had an opportunity to interview Posner and thereby discover that he would tell what might be an untrue story on the witness stand. Without a pretrial opportunity to interview him, it was not likely that she could reasonably glean this information. Because this lack of opportunity is the government's fault, the government cannot now complain about Opager's tardy discovery that the payroll records would be necessary to her defense. At any rate, these records were not needed as a part of her case "in chief." Opager needed them to destroy significant evidence brought out in the government's case. The erroneous exclusion of this evidence cannot be classed as harmless.[9]

The District Court's exclusion of the records is itself reversible error. An additional such error is the government's refusal to obey the Court's order requiring disclosure of Posner's whereabouts.

---

7. Under F.R.Evid. 402,
   "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority."

8. The Standing Discovery Order provided that all documents intended to be introduced by the parties as "evidence in chief" be produced for inspection prior to March 24, 1977 or as soon as discovered. Record at 587.

9. The exclusion of the business records might well have affected the jury's verdict. The jury could have concluded that the documentary evidence was so persuasive as to overcome any doubts as to the oral testimony of Opager's witnesses, her co-workers. The witnesses' testimony might have been perceived by the jury as being colored by friendship or sympathy for the defendant. The records, however, depending upon how the jury credited them, might have provided neutral and perhaps even irrefutable evidence of the dates of employment. Thus, the fact that witnesses were allowed to testify that Opager and Posner did not work together in 1974 does not mitigate the prejudice caused by the failure to admit the documentary evidence. Because we cannot say that the refusal to admit the records did not substantially affect the jury's decision, this erroneous evidentiary ruling constitutes reversible error. *Kotteakos v. United States,* 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557.

### Failure To Disclose Informant's Whereabouts

■ Pursuant to Opager's motion, on April 15, 1977, the United States Magistrate ordered the government to disclose to defendant the whereabouts and identity of the government's confidential but identified informant, Phillip Posner. The Magistrate's order was affirmed by the District Court on April 29, 1977.[10] Despite the Court's order, the United States Attorney failed to disclose Posner's whereabouts. On May 9, 1977, Opager filed her first motion to dismiss for failure of the government to comply with the Court's order. In a hearing on that motion, the District Court refused to dismiss the indictment but did direct the government either to supply Posner's address or produce Posner for an interview with defense counsel. Still, the government refused to comply. On May 19, 1977, less than two weeks before trial, the defense filed a second motion to dismiss for failure to disclose Posner's whereabouts. This motion was never ruled upon by the Court, and the parties proceeded to trial on June 1, 1977. On the first day of trial, Opager reminded the Court of its outstanding motion but the Court did not rule on it. Later, in cross-examining Posner, defense counsel sought to elicit Posner's address. The Court, however, sustained government objections to questions on this subject. Consequently, Posner's whereabouts was never revealed to defendant.

By withholding Posner's address without any cause whatsoever, and, indeed, in violation of a court order, the government denied Opager even an opportunity to interview Posner prior to trial. Thereby, the government effectively thwarted Opager's efforts to prepare a full defense. A convic-tion obtained under such circumstances is vulnerable indeed.

The importance to a litigant of interviewing potential witnesses is undeniable. In particular, in criminal cases, where a defendant's very liberty is at stake, such interviews are especially crucial. Thus it is that one of the first things responsible counsel does in preparing a case is to seek to interview those witnesses involved in the litigation.

Here, as developments at the trial revealed, an interview with Posner was especially important. Posner's testimony was extremely damaging to Opager's case. Not only was Posner a witness to the cocaine transaction at issue. He, and he alone, destroyed Opager's entrapment defense by testifying to observing Opager's participation in other drug transactions in the past. If Opager had been able to interview Posner she might have been better prepared to challenge his statements at trial. At any rate, she would have had at least a chance to rebut his testimony.

Such a chance was, however, denied Opager. Despite the potential significance of an interview with Posner, the government made such an interview an impossibility by ignoring the Court's order to disclose Posner's whereabouts.[11]

Even if an interview were not conducted, disclosure of Posner's whereabouts would still have been valuable to Opager. For example, if Posner were currently in government custody or in a government-sponsored drug treatment center, such information could have been used to discredit Posner's testimony. Cf. Alford v. United States, 1931, 282 U.S. 687, 693, 51 S.Ct. 218, 220, 75 L.Ed. 624 (Defendant entitled to

10. In challenging the Magistrate's order, the government contended that disclosure was unnecessary since Opager knew Posner's identity and since Posner did not "wish" to speak with defense counsel prior to trial. The government persisted in these arguments in response to defendant's subsequent motions to dismiss for failure to disclose.

11. Of course, we in no way intimate that Posner was bound to submit to an interview with Opager's lawyers. Whether he did or did not, however, was a matter between him and defense counsel. Our objection here is to the government's attempt to assume the role of arbiter in determining whom the defense will or will not interview. The government may not disregard court orders and thereby obstruct a defendant's legitimate efforts to interview a witness.

inquire into witness's address so as to show on cross-examination that the witness's testimony was affected by "fear or favor growing out of his detention."). Because of the government, however, Opager was never able to obtain such information, and her defense was consequently prejudiced.

To justify its refusal to divulge Posner's whereabouts, the government makes several arguments: (1) Posner did not "wish" to be interviewed by defense counsel. (2) Disclosure of Posner's address was unnecessary since Opager already knew his identity. (3) No harm was done by the pre-trial failure to disclose since Opager had an opportunity to interview Posner when he was subpoenaed to appear at trial. We find these arguments without merit.

■ The fact, as the government undertook to say, that Posner did not "wish" to be interviewed is irrelevant here. The address of a government witness must ordinarily be disclosed to the defense, and the burden falls on the government to show why, in a particular case, such disclosure should not be made. *United States v. Alston,* 5 Cir., 1972, 460 F.2d 48. The mere wish of the witness not to be interviewed is insufficient to meet this burden. Indeed, a witness's desire not to be interviewed becomes relevant only *after* his whereabouts has been disclosed, when the witness (and not the government) must decide whether he will accede to a litigant's request for an interview. See note 11, *supra.*

■ That Opager knew Posner's identity in no way mitigates the harm caused by the failure to disclose Posner's whereabouts. Opager might have known Posner since infancy. But such knowledge of his background would never compensate for the need for more specific information regarding Posner's contemplated testimony and current activities and whereabouts. Nor can we agree with the government's argument that there was no prejudice to Opager

since she had an opportunity to interview Posner once trial had commenced.

■ But most of all, each of the government's arguments falls flat in light of the Court's *order* requiring disclosure. The government's arguments might properly have been raised in opposing Opager's initial request for Posner's address. Once the Court's order was entered, however, the government's objections to disclosure became moot except insofar as the government in an appropriate, timely way sought reconsideration. Otherwise, the government was bound to obey the Court's order.

Of course, obey is exactly what the government did not do. Not once, but three times, did the trial court direct the government to disclose Posner's whereabouts to Opager. Nevertheless, the government never complied, stating as its justification for such refusal Posner's "wish" not to be interviewed. Then, to add insult to injury, the government, in another one of those reflex, unintelligible, unthought objections, successfully objected to Opager's attempt to cross-examine Posner about his whereabouts.[12]

The government's refusal to obey the District Court's disclosure order not only affronted the Court and prejudiced Opager's efforts to defend herself. The government's conduct also frustrated the important federal policy favoring broad disclosure in criminal cases. *See Brady v. Maryland,* 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; *Jencks v. United States,* 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103; F.R.Crim.P. 16.

We hold that the government must comply with the orders of the trial court. As in *United States v. Stewart,* 5 Cir., 1978, 576 F.2d 50, we are not in the business of excusing noncompliance after-the-fact on the ground that after all it didn't matter. It does matter that the Court's orders are obeyed. Noncompliance—coupled with sub-

---

12. Although we do not decide the constitutional question today, we observe that in situations analogous to the instant one, the denial of an opportunity to cross-examine a witness regarding his whereabouts has been held to violate a defendant's Sixth Amendment right to confront a witness. *Smith v. Illinois,* 1968, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956; *Alford v. United States,* 1931, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624.

stantial likelihood of injury—visits on the government the consequence of this reversal.

REVERSED.