**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Isidro FARIAS–FARIAS,
Defendant–Appellant.**

**No. 90–8090.**

United States Court of Appeals,
Fifth Circuit.

Feb. 22, 1991.

Wm. R. Maynard, Asst. Federal Public Defender, Lucien B. Campbell, Federal Public Defender, El Paso, Tex., for defendant-appellant.

Larry Mathews, LeRoy Morgan Jahn, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GARWOOD and WIENER, Circuit Judges and VELA,[1] District Judge.

PER CURIAM:

Appellant was convicted on two counts by an El Paso federal jury. Claiming error in the admission of evidence at his trial he appeals his conviction. We affirm.

## I.

## THE COUNTS AND THE CONVICTION

Defendant–Appellant, Isidro Farias–Farias ("Farias"), was arrested at the U.S.-Mexican border in El Paso, Texas, and charged with the importation of marijuana in violation of 21 U.S.C. §§ 952(a) and 960(a)(1),[2] and of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). A jury convicted Farias of both counts and he was subsequently sentenced to concurrent terms of thirty-seven months on each count.

## II.

## THE RANCHERO

On August 15, 1989, Farias arrived at the Ysleta Port of Entry driving a 1979 Ford Ranchero. Farias was alone and was attempting to enter the United States at this port of entry. According to the primary customs inspector at the bridge, Vasquez, Farias was nervous, sweating and visibly shaking as he gave a negative customs declaration. Inspector Vasquez referred Farias and his vehicle to secondary inspection.

At secondary inspection, Vasquez noticed that the taillights of the Ranchero appeared to have been tampered with. The inspector knew from his experience that the body of the Ranchero contained empty cavities designed into it at the factory. Vasquez took a screwdriver, removed the taillights, noticed some packages stuffed behind the taillights and called out to Customs Inspector Coffman that the vehicle was loaded. Defendant–Farias was then seized and arrested.

Hidden within the rear side panels of the Ranchero was 62 pounds of marijuana in numerous packaged bundles mixed with onions, coffee and soap. Texas registration papers were also found indicating that the registered owner of the vehicle was a man named Jose Tovar. In addition, a motor vehicle registration application form in the name of Moises G. Sanchez, 601 N. Stanton, El Paso, Texas was found in the Ranchero. A customs investigation determined that the address 601 N. Stanton in El Paso, Texas, does not exist. The following items were also found in the vehicle: a permit in the name of Moises Garcia to import the Ranchero temporarily into Mexico, dated July 31, 1989, Farias's birth certificate and some of the defendant's clothes in a paper bag.

## III.

## THE TRIP AND THE TRIAL: FROM L.A. TO EL PASO WITH A STOP IN BETWEEN

Testimony introduced by the government indicated Farias gave post-arrest, post-Miranda statements. Customs officers testified on direct that defendant explained he had gone to Mexico to visit family in the state of Michoacan. Defendant said he went to Mexico with an acquaintance named Moises Garcia. He met Garcia in Los Angeles near his home. Garcia explained he was going to Mexico, to Monterrey or Guadalajara, and asked Farias to go with him and help drive. They left on July 31, 1989, in a black Dodge pickup with California plates and entered Mexico at El Paso/Juarez.

On cross examination by defense counsel, government witnesses testified that Farias said Garcia had asked him to drive the Ranchero north. One agent also acknowledged that Farias told agents he knew nothing of the marijuana hidden in the Ranchero.

In his defense, Farias testified on direct he had met Moises Garcia in Los Angeles

---

1. District Judge of the Southern District of Texas, sitting by designation.

2. This constituted count one.

in 1989 at some apartments near his residence. On about July 20, 1989, Farias mentioned to Garcia he was going to visit family in Mexico. Garcia asked Farias to help drive Garcia's vehicle as far as Guadalajara so they could travel together. Farias agreed and the two traveled to Guadalajara. Farias went on to Michoacan by bus to see family and stayed there for several days. He returned to Guadalajara where he contacted Garcia through a clerk at the Hotel Canada. Garcia had apparently arranged to leave a message at the hotel as to his whereabouts.

Farias met Garcia at the hotel. Garcia then gave Farias the keys to the Ranchero and asked him to drive the vehicle back to Los Angeles and leave it at the house of a friend of Garcia. Farias could not recall the name or the street address of this individual. Farias denied any knowledge of the marijuana both at the border and at trial.

Before cross examination of the defendant, the trial judge reconsidered a motion in limine previously made by the defendant. The judge ruled that the prosecutor could ask the defendant whether he revealed to the customs agent during post-arrest interrogation his record of previous arrests. Prior to the questioning regarding extrinsic offenses, the court gave the jury a limiting instruction telling them the questions were being admitted for the sole purpose of determining whether the defendant was truthful at the border and whether he is truthful at trial. The instruction stressed that the evidence was not being admitted to show bad or evil character.[3]

The prosecutor then asked Farias whether he had admitted to the customs agent an arrest in 1986 for drunk driving. Defense counsel objected to the question inquiring into the nature of the offense instead of asking solely whether an arrest took place. The prosecution next asked whether Farias had been arrested in 1980 for alien smuggling and in 1986 for carrying a concealed weapon in a vehicle and carrying a loaded firearm in a public place. Before either of these questions could be answered by appellant, defense counsel objected on the basis that the questions went into the nature of the offense. The judge then called both attorneys to the bench and a conference ensued. At the bench conference, the court instructed the prosecutor to ask only whether the arrests occurred and to not go into the details of the arrests. After the conference, the court again gave a limiting instruction to the jury.[4]

---

3. Before this questioning, the judge instructed the jury as follows:

Ladies and gentlemen, I want you to pay very close attention to what I am about to tell you and instruct you.

I'm going to admit the following questions for the sole purpose for you to determine whether the defendant was truthful or not truthful then on August 15th, 1989 and whether or not he is truthful or not truthful today.

The following evidence is not being admitted to show that this defendant has any evil character or bad character. It is not being admitted to show that the defendant acted on August the 15th, 1989 in conformity with any bad character nor is it being admitted to show any motive or opportunity or intent or preparation or plan or identity or absence of mistake or accident.

Again, the following questions are only being admitted to show whether or not the defendant, this witness, was truthful on August the 15th and whether or not he's being truthful now.

That is to say, your job with all of the witnesses, is to determine the truth or non-truth, the credibility, if you want, of all the witnesses, and its being admitted for that purpose and that purpose only.

After these questions I will instruct you again.

4. The second instruction given by the court was the following:

Ladies and gentlemen, I will instruct you again, and I want to be absolutely sure.

This court has an obligation to be absolutely fair with the government as well as the defendant and when we make these decisions, I will tell you exactly what you can consider it for and what you cannot consider it for, and you need to be very careful with regards to what you, what you [sic] may consider the following evidence for.

I am telling you again. Your job is to determine the credibility, what you can believe as to any witness, including this witness, and the following evidence is only admitted, again, to show whether or not this witness was truthful then and is truthful today or is not truthful then and not truthful today.

Just like all the other officials that were before you, the customs agents that were before you, whether they were truthful today or

The questioning resumed and Farias testified that he told the customs agent, in response to questioning, that he had been arrested "two or three times or four." In rebuttal, the government called the agent to whom Farias made the post arrest statements. This witness testified Farias told him he had only one arrest for drunk driving in 1986.

On appeal, Farias raises the following two points of error: 1.) the trial court erred by allowing the prosecution to cross-examine the defendant about his prior arrests and whether the arrests were truthfully revealed to the customs agent and 2.) the trial court erred by admitting extrinsic evidence (i.e. the prior arrests) in violation of Fed.R.Evid. 608(b).

## IV.

## EXTRINSIC EVIDENCE AND FEDERAL RULE OF EVIDENCE 608(b)[5]

■ Generally, extrinsic evidence is not admissible to prove specific conduct of a witness in order to attack his credibility. Fed.R.Evid. 608(b). *See United States v. Johnson,* 848 F.2d 904, 906 (8th Cir.1988). The Rule, however, does permit inquiry on cross examination into specific instances of conduct which may bear on a witness' credibility in order to impeach the credibility of the witness. *United States v. Draper,* 888 F.2d 1100, 1104 (6th Cir.1989). *See also United States v. Beros,* 833 F.2d 455, 463 (3rd Cir.1987) (explaining that where credibility is an important issue specific instances of conduct may come in on cross examination).

nation). Admission of the impeaching evidence is discretionary with the trial judge. *Johnson,* 848 F.2d at 906. The trial judge's discretion under Rule 608(b) is very substantial. *United States v. Mateos–Sanchez,* 864 F.2d 232, 236 (1st Cir.1988). The probative value of the testimony must substantially outweigh the prejudicial value under Rule 403.[6] Fed.R.Evid. 403.

■ During his direct testimony, appellant denied knowledge of the marijuana hidden in the Ranchero. He attempted to portray to the jury that he was a truthful person. Farias told the agents at the border he had no knowledge of the marijuana and he told the jury he had no knowledge of the marijuana. This attempted to give the jury the impression that he was telling the truth at the border and that he was telling the truth at trial. The government was entitled to try and show that Farias did not tell the whole truth at the border and consequently was not telling the truth at trial.[7] *See generally United States v. Cardenas,* 895 F.2d 1338, 1345–46 (11th Cir.1990) (involving an analogous situation where defendant attempted to portray himself as a "Just Say No To Drugs" type of individual by testifying that he had not used cocaine in many years; the appellate court upheld the admission of defendant's prior cocaine use and distribution under Rule 608(b) stating that the evidence was admissible to contradict the defendant's earlier testimony).

---

truthful at the time that these events took place.

This is what's at issue. What is not at issue is that just because something has occurred in the past that now anyone is acting in conformity with that or that because there is some evidence of being a bad character, that he's now acting in conformity to that. And I want to be absolutely sure that all of you understand that.

5. This rule in pertinent part reads:
   **Specific instances of conduct.**—Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if

probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

6. We note that the trial judge made the finding under rule 403 that the probative value of the evidence substantially outweighed the prejudicial value. We cannot say that the trial judge abused his discretion in making this determination.

7. *See* 3 Weinstein's Evidence ¶ 608[05] (summarizing and explaining the law in this area).

When the defendant takes the stand he puts his credibility at issue. *Mateos–Sanchez*, 864 F.2d at 237. "Rule 608(b) should not stand as a bar to the admission of evidence introduced to contradict, and which the jury might find disproves, a witness's testimony as to a material issue of the case." *United States v. Opager*, 589 F.2d 799, 803 (5th Cir.1979). Knowledge was a key issue in this case. When Farias testified he denied any knowledge of the marijuana hidden in the Ranchero. He also indicated that he was entirely truthful with the customs agents at the border. Because he took the stand and espoused this position, the jury was entitled to know the entire story,[8] that he did not admit all of his prior arrests in response to questioning. Consequently, the evidence of the prior arrests was admissible and the trial judge did not err in this respect.

## V.

### THE NATURE OF THE ARRESTS

■ Farias further complains that the prosecutor inquired about the nature of the offenses for which Farias had been arrested.[9] We conclude, however, that this contention presents no reversible error. Evidence of the nature of the offenses for which Farias had been thrice arrested prior to August 15, 1989, was relevant to afford full proper probative force to the evidence that Farias falsely denied any arrests other than one for drunk driving when questioned on that date by the customs agents at the border. If the unmentioned arrests had been for offenses that were trivial— *e.g.*, speeding—the failure to mention them to the customs agents could easily be attributed to oversight or innocent belief that they were too insignificant to justify mention. The proper probative force of the false denial evidence in the jurors' minds would accordingly be diminished. On the other hand, if the unmentioned prior arrests had been for offenses that were more serious or analogous to the matter about which the agents were then questioning Farias—*e.g.*, an alien smuggling arrest— the failure to mention them would more likely be attributable to a conscious, intentionally deceptive decision. The proper probative force of the false denial evidence would thus be increased.

■ The severity of the unmentioned offenses for which Farias had previously been arrested, and thus the seriousness and significance of his false denial to the customs agents of any prior arrests other than one for drunk driving, also constitutes and is admissible as substantive evidence of his guilt—rather than merely impeachment of his trial testimony—under the recognized principle of deception evidencing consciousness of guilt. *See generally* 2 Wigmore, *Evidence* § 278 (Chadbourn rev. ed. 1979); *McCormick on Evidence* § 273 at 808 & n. 2 (3d ed., Cleary, 1984).

Our jurisprudence is replete with instances in which a defendant's inconsistent statements or falsehoods made at the time of his arrest for smuggling drugs have been held to constitute substantive evidence of guilt on a consciousness of guilt basis. Recent examples include the following decisions. *United States v. Barbosa*, 906 F.2d 1366, 1368 (9th Cir.1990); *United States v. Diaz–Carreon*, 915 F.2d 951, 955 (5th Cir.1990); *United States v. Romero–Reyna*, 867 F.2d 834, 836 (5th Cir.), *app. after remand*, 889 F.2d 559 (1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1818, 108 L.Ed.2d 948 (1990); *United States v. Hastamorir*, 881 F.2d 1551, 1557 (11th Cir. 1989); *United States v. Joseph*, 892 F.2d 118, 125 (D.C.Cir.1989); *United States v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988); *United States v. Vazquez*, 857 F.2d 857, 865 (1st Cir.1988); *United States v. Walitwarangkul*, 808 F.2d 1352, 1354 (9th Cir.), *cert. denied*, 481 U.S. 1023, 107 S.Ct. 1909, 95 L.Ed.2d 515 (1987); *United States v. Williams–Hendricks*, 805 F.2d 496, 501 (5th Cir.1986); *United States v. Tebha*, 770

---

**8.** Defense counsel was warned in advance that if the defendant testified, the prosecution would try to admit into evidence the fact of the prior arrests.

**9.** The arrests inquired about at trial dealt with the following: drunk driving, alien smuggling, carrying a concealed weapon and carrying a loaded firearm in a public place.

F.2d 1454, 1457 (9th Cir.1985); *United States v. Guerrero–Guerrero,* 776 F.2d 1071, 1074 (1st Cir.1985), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986). *See also, e.g., United States v. Green,* 594 F.2d 1227, 1229 n. 1 (9th Cir. 1979), *cert. denied,* 444 U.S. 853, 100 S.Ct. 108, 62 L.Ed.2d 70 (1979). It is simply common sense that Farias's lying to the customs agents questioning him about the marijuana just found in the vehicle he was driving is some evidence of his guilty knowledge.

Nothing in Fed.R.Evid. 608(b) is to the contrary. This Court has held that "[t]he application of Rule 608(b) to exclude extrinsic evidence of a witness's conduct is limited to instances where the evidence is introduced to show a witness's general character for truthfulness." *United States v. Opager,* 589 F.2d 799, 801 (5th Cir.1979); *see Carson v. Polley,* 689 F.2d 562, 574 (5th Cir.1982). Rule 608(b) affects only evidence of prior instances of conduct when properly relevant solely for the purpose of attacking or supporting a witness's credibility; it in no way affects the admission of evidence of such prior acts for other purposes, chiefly under Rules 403 and 404. *See, e.g., United States v. Simpson,* 709 F.2d 903, 908 (5th Cir.) (extrinsic evidence of prior instances of conduct was admissible under Rule 404(b) to establish requisite element of defendant's intent), *cert. denied,* 464 U.S. 942, 104 S.Ct. 360, 78 L.Ed.2d 322 (1983); *Carson,* 689 F.2d at 574–75 (extrinsic evidence of prior conduct admissible as relevant to material issue); *Opager,* 589 F.2d at 801 (extrinsic evidence

of prior conduct admissible to disprove a specific fact material to defense); *United States v. Contreras,* 602 F.2d 1237, 1241–1242 (5th Cir.) (extrinsic evidence of defendant's prior conduct acts admissible to "test the credibility and factual foundation of [a specific] statement"), *cert. denied,* 444 U.S. 971, 100 S.Ct. 466, 62 L.Ed.2d 387 (1979); *United States v. Hodnett,* 537 F.2d 828, 829 (5th Cir.1976) (extrinsic evidence of prior bad acts admissible to show witness's bias and prejudice). The fact that Rule 608(b) by its terms refers to prior conduct specifically "of a *witness,* for the purpose of attacking or supporting the *witness' credibility* " reflects that the rule is not intended broadly to restrict the introduction of exculpating or incriminating substantive evidence.[10] Thus, evidence of Farias's false statements at the time of his arrest for the offense in question, as substantive evidence of guilt, is admissible regardless of whether the requirements of Rule 608(b) are satisfied.[11]

## VI.

### ANY ERROR WAS HARMLESS

■ Further, under Fed.R.Evid. 103(a) [12] and Fed.R.Crim.P. 52(a) [13] we find that even if there were any error in this respect, it was harmless. The trial court's limiting instructions (see notes 3 and 4) minimized the potential for any unfair prejudice to the defendant. *United States v. Contreras,* 602 F.2d 1237, 1240 (5th Cir.1979) (per curiam). Furthermore, "[a]ny prejudice the evidence might have caused was cured by the trial court's constant and careful admo-

---

**10.** Similarly, Rule 608(a) concerns itself with "[t]he credibility of a witness" being "attacked or supported by" certain evidence.

**11.** We do not intend to minimize the importance of a determination by the trial judge under Rule 403 as to the probative value of the proffered evidence relative to its potential for causing unfair prejudice. It may be that in some situations otherwise generally analogous to this case the nature of the offenses for which the defendant was arrested would be so prejudicial, and their proper probative value so minimal, as to warrant or even require exclusion of that evidence under Rule 403. *Cf., e.g., United States v. Weir,* 575 F.2d 668, 670–72 (8th Cir.

1978). This is a matter largely within the discretion of the trial judge, and we see no abuse of that discretion here.

**12.** This rule provides in pertinent part:

    **Effect of erroneous ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected....

The advisory committee notes to this rule inform that the law with respect to harmless error is unchanged.

**13.** This rule similarly provides that "[a]ny error ... which does not affect substantial rights shall be disregarded."

nitions to the jury about the meaning and purpose of the evidence." *United States v. Cordell*, 912 F.2d 769, 775 (5th Cir.1990). *See also United States v. Hopkins*, 916 F.2d 207, 218 (5th Cir.1990) (stating that the jury is presumed to follow any limiting instruction given).

The evidence against Farias was strong and the admission of the nature of the arrests was negligible in looking at the record as a whole.

Every customs officer who testified stated that the defendant was extremely nervous during the ordeal at the border. He was shaking, sweating and his carotid artery was visibly pumping. Further, Agent Otero testified the Ranchero had no tourista sticker which is customary for a United States vehicle traveling to the interior of Mexico. The car had expired license plates, no toiletries were found in the vehicle and the address given on an application for a Texas title was nonexistent. Farias's testimony was to the effect that he met Moises Garcia on the street in Los Angeles, they went to Mexico and he was driving a different vehicle back to drop off to some unknown individuals at an unknown address in the Los Angeles area.

During closing arguments no mention of the prior arrests was made by the prosecutor. The only arrest mentioned was by defense counsel and this arrest was for drunk driving, which the defendant had admitted. The judge in his charge again cautioned the jury that the prior arrests were not to be used as proof that Farias was a bad character and hence likely acted in conformity with that in reference to the charged offenses. Looking at all of this together, it is hard to see how the defendant was harmed by the admission of the nature of the arrests. In fact, of all the arrests mentioned where the nature of the arrest was inquired about, Farias only answered the question relating to the drunk driving arrest. Objections were interposed before he could answer the other questions and answers were never given. Similarly, the customs agent on rebuttal testified only about the drunk driving arrest that defendant had previously admitted both at the border and at trial. The jury had ample evidence to convict Farias without knowing about the arrests, much less their nature. We are left with the firm conviction that any error in this respect was harmless.

## VII.

## CONCLUSION

Accordingly, we decline the invitation to reverse appellant's conviction and remand the case for a new trial. The judgment of conviction is

AFFIRMED.