932 F.2d 970
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carlton Howard PETWAY, Jr., Defendant-Appellant.
 No. 90-6050.
 United States Court of Appeals, Sixth Circuit.
 May 15, 1991.
 
 Before KENNEDY and BOYCE F. MARTIN, Jr., Circuit Judges, and SPIEGEL, District Judge.*
 PER CURIAM.
 
 
 1
 Carlton Petway, Jr. appeals his jury conviction for conspiracy to possess with intent to distribute cocaine, possession with intent to distribute cocaine, and possession of marijuana in violation of 21 U.S.C. Secs. 846, 841(a)(1), and 844, respectively. On appeal, Petway challenges (1) the district court's rulings with respect to a number of evidentiary issues; (2) the district court's refusal to dismiss the conspiracy count of the indictment; (3) the sufficiency of the evidence supporting his conviction; (4) the legality of search and seizure of a package which contained one kilogram of cocaine and eventually lead to Petway's arrest. For the following reasons, we affirm.
 
 
 2
 Carlton Petway was arrested on June 13, 1988, after he had claimed a large cardboard box that was shipped from Los Angeles via American Airlines Priority Parcel service. Earlier that same day, Petway had presented the box to the American Airlines ticket agent Robert Greb in Los Angeles for shipment to Nashville. The box was addressed to Petway. Because the price of shipment was paid in cash, the ticket agent became suspicious and x-rayed the box. The x-ray revealed items which differed from the description on the air-bill. Greb contacted his supervisor and together they opened the box and found a red package that appeared to contain an unlawful substance. They then informed law enforcement officials stationed at the airport. DEA Agent John Marcello responded to the call of the American Airlines' employees. Upon arrival, he discovered a red package which had been taken out of the box by American employees. He conducted a field test on a small amount of the substance from the red package, which revealed the substance to be cocaine. The red package was placed back into the box and put on the American Airlines flight to Nashville. Meanwhile, Marcello contacted DEA Agents in Nashville concerning the arrival of the box. Petway, who had taken another flight back to Nashville, was observed claiming the box at the American Airlines desk. Petway was approached by DEA Agent Kelly Goodwins who requested to search the box. Petway acquiesced but said that he did not "know anything about any drugs in it." Petway was then placed under arrest.
 
 
 3
 During the course of trial, the district court permitted government witnesses James Armstrong and Albert Claybrook to testify as to statements made to them by their supplier of cocaine, Kenneth Covington, which identified Petway as Covington's supplier of cocaine. These statements were admitted pursuant to Fed.R.Evid. 801(d)(2)(E) which provides that a statement is not hearsay if the statement is offered against a party and is a statement by a co-conspirator of that party made during and in furtherance of the conspiracy. In order for a statement to be admissible pursuant to Fed.R.Evid. 801(d)(2)(E), the government must establish by a preponderance of the evidence that (1) a conspiracy existed; (2) that the defendant against whom the evidence is being offered was a member of the conspiracy; (3) the statement was made in the course and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987); see also United States v. Vinson, 606 F.2d 149, 152 (6th Cir.1979), cert. denied, 444 U.S. 1074 (1980). We review the district court's admission of the co-conspirator's statements under an abuse of discretion standard. United States v. Levy, 904 F.2d 1026 (6th Cir.1990) (quoting United States v. Rios, 842 F.2d 868, 872 (6th Cir.1988) (per curiam), cert. denied, 488 U.S. 1031 (1989)), cert. denied sub nom. Black v. United States, 111 S.Ct. 974 (1991).
 
 
 4
 In objecting to the admissibility of Covington's statements under 801(d)(2)(E), Petway argues that the government failed to meet its burden of proving both the existence of a conspiracy and that Covington's statements were made in furtherance of such conspiracy. Petway argues that the district court, in making the preliminary determination that a conspiracy existed, relied solely upon Covington's hearsay statements and did not have any independent evidence to support its finding of an existence of a conspiracy. In Bourjaily v. United States, 483 U.S. 171 (1987), the Supreme Court held that a district court could consider the out-of-court statements sought to be admitted under 801(d)(2)(E) in determining the existence of a conspiracy. The Court specifically reserved judgment on whether the out-of-court statements alone could provide sufficient evidence to support such a determination. Id. at 181. In this case, we do not need to reach this question since the district court had before it independent corroborating evidence to support its determination.
 
 
 5
 James Armstrong testified that on two occasions he observed Covington remove cocaine from a brown cardboard box. On the first occasion he noted that the box also contained warm-up or jogging suits and Louis Vitton hats, pocketbooks, and wallets. On the second occasion, Armstrong was at Covington's house when Covington received a phone call. After the call, Covington informed Armstrong that he going to the airport to pick something up, but that Armstrong could not accompany him. As Armstrong was leaving, he noticed Petway pulling up to Covington's home. Later that same day, Covington called Armstrong and informed him that he had returned from the airport and for him to come back over. As Armstrong was pulling up to Covington's home he again saw Petway, this time departing. Once inside, Armstrong observed two cardboard boxes sitting in the middle of the floor. The two boxes had not been there when Armstrong was at Covington's house earlier in the day before Covington left for the airport. Armstrong observed Covington open one of the boxes and remove cocaine. He also noted that the box also contained warm-up suits. The box Petway picked up at the Nashville airport was identified by Armstrong as being of the same type as the ones he saw in Covington's house. This box was also found to contain cocaine and warm-up suits, just as those boxes Armstrong noticed at Covington's house. This testimony alone provides independent corroborating evidence of the out-of-court statements. This testimony coupled with the statements of Covington that Petway was his supplier provides ample evidence on which the district court was justified in concluding a conspiracy existed.
 
 
 6
 Petway next argues that the statements of Covington identifying Petway as his supplier were not in furtherance of the conspiracy. However, a statement that identifies the role of one co-conspirator to another is in furtherance of the conspiracy. United States v. Hitow, 889 F.2d 1573, 1581 (6th Cir.1989); Rios, 842 F.2d at 874; United States v. Magee, 821 F.2d 234, 244 (5th Cir.1987). We have little difficulty in concluding that the statements of Covington which identified Petway as his supplier of cocaine to co-conspirators Armstrong and Claybrook was "in furtherance" of the conspiracy. Thus, we conclude that Covington's statements were properly admitted under Fed.R.Evid. 801(d)(2)(E).
 
 
 7
 Petway also challenges the propriety of admitting prior out-of-court statements made by witness Claybrook relating to a conversation he had with a police detective. On re-direct examination, Claybrook was asked by the prosecutor if he had earlier indicated to the police detective that Petway and Covington were getting cocaine from California in jogging suits. Claybrook responded that he did in fact indicate such information to the police detective. Petway argues that this testimony was impermissible hearsay. We think not. This statement was not hearsay. The advisory note to Fed.R.Evid. 801 provides:
 
 
 8
 (1) Prior statement by witness. Considerable controversy has attended the question whether a prior out-of-court statement by a person now available for cross-examination concerning it, under oath and in the presence of the trier of fact, should be classed as hearsay. If the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem.
 
 
 9
 This is precisely what occurred with respect to this testimony, thus, the testimony was properly admitted.
 
 
 10
 Petway also argues that the rebuttal testimony of Quinton Sims and Patrick Lewis was improperly introduced into evidence. A district court's decision regarding the admissibility of rebuttal testimony will not be disturbed absent an abuse of discretion. Geders v. United States, 425 U.S. 80, 86 (1976). During trial, Petway took the stand in his defense and testified that he did not sell or supply cocaine to Covington or anyone else. Petway testified on cross-examination that he had not used cocaine at a hotel party hosted by Bryan Freeman in Nashville. Petway also called Bryan Freeman who testified that he never knew Petway to be in possession of drugs nor had he ever seen Petway in possession of or selling cocaine. Petway also called his roommate, Marlin Watts, who testified that he had never known the defendant to be involved in the possession or sale of drugs and that he had lived in the same house with the defendant since January of 1988. The government then called witnesses Quinton Sims and Patrick Lewis to rebut this evidence that had been presented by the defendant. Sims testified that he attended a party at a hotel where Petway, Covington, and Freeman were present and that all three had used cocaine. Lewis testified that he had been at Petway's house along with Covington and that all three had used cocaine. Following their testimony, the district court instructed the jury that this testimony was being admitted for the limited purpose of credibility.
 
 
 11
 Petway argues that his rebuttal testimony introduced by the government was barred by Fed.R.Evid. 608(b). Rule 608(b) specifically prohibits a party from introducing extrinsic evidence to prove specific instances of conduct of a witness for the purpose of attacking the witness' credibility. United States v. Graham, 856 F.2d 756, 759 (6th Cir.1988), cert. denied, 489 U.S. 1022 (1989). Petway argues that the government introduced extrinsic evidence, namely the testimony of the two rebuttal witnesses, to attack the credibility of both his and Freeman's testimony. However, Petway's reliance upon Rule 608(b) is misplaced. In this case, the rebuttal testimony was not admitted in order to expose prior conduct of either Petway or Freeman which would have questioned their credibility as witnesses. As the Fifth Circuit aptly noted in United States v. Opager, 589 F.2d 799 (5th Cir.1979), "the applicability of Rule 608(b) to exclude extrinsic evidence of a witness' conduct is limited to instances where the evidence is introduced to show a witness' general character for truthfulness." Id. at 801.
 
 
 12
 This testimony was introduced to rebut the false impression created by Petway and defense witnesses that Petway did not have any involvement with cocaine. United States v. Leavis, 853 F.2d 215, 220 (4th Cir.1988). Presumably, if the jury would have believed Petway's defense he would have been acquitted of the two counts against him involving cocaine. Having purposefully constructed this defense, Petway cannot now be heard to complain if the government attempts to expose its falsity. See Harris v. New York, 401 U.S. 222, 225 (1971). Accordingly, we find no abuse in discretion on the part of district court in admitting the rebuttal testimony of either Sims or Lewis.
 
 
 13
 Petway next argues that the district court erred in failing to dismiss the conspiracy count of the indictment. First, Petway challenges whether the grand jury was presented with evidence which related to the conspiracy which was actually proved at trial. Petway argues that the grand jury returned the conspiracy count of the indictment based upon evidence which established that he was involved in a conspiracy with Anthony Calloway, Britt Bogus and Winston Burns. However, Petway argues that the evidence at trial established a conspiracy between Petway, Covington, Armstrong, and Claybrooks. Similarly, Petway also argues that whereas the indictment alleges a single conspiracy, the evidence adduced at trial established multiple conspiracies. Thus, Petway argues a "variance" occurred between the indictment and the proof in trial requiring reversal. United States v. Feinman, --- F.2d ---- (6th Cir. April 15, 1991) (No. 90-3721); United States v. Warner, 690 F.2d 545 (6th Cir.1982).
 
 
 14
 We find that the government only proved a single conspiracy existed which included the shipment of cocaine from a source in California by means of American Airlines priority parcel to Petway in Nashville, who distributed it to Covington, who in turn distributed to both Armstrong and Claybrooks. The fact that the grand jury heard evidence as to the involvement of other individuals in addition to those individuals named by the government in its bill of particulars does not compel the conclusion that the grand jury heard evidence concerning a different conspiracy. In fact, the grand jury heard testimony concerning the same scheme in which Petway was ultimately convicted for, namely, transporting cocaine from Los Angeles to Nashville. Because this was a "chain conspiracy" the government was not required to show an agreement among the members of the conspiracy to participate in what they knew to be a collective venture; such agreement could have been inferred from the interdependence of the enterprise. United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.1986), aff'd on other grounds, 483 U.S. 171 (1987) (citing Warner, 690 F.2d at 549); see also United States v. Bates, 600 F.2d 505, 509 (5th Cir.1979) (single conspiracy does not become multiple conspiracies because its members are cast in different roles).
 
 
 15
 We have little difficulty in disposing of Petway's remaining arguments for reversal. Petway argues that the evidence adduced at trial was insufficient to support a finding by the jury that conspiracy to distribute cocaine and possession of cocaine were proved beyond a reasonable doubt. Petway's argument with respect to his conspiracy conviction hinges on our finding Covington's statements identifying the defendant as his cocaine supplier inadmissible. Because we found that these statements were admissible, this argument fails. There is ample evidence from which the rational jury member could have found beyond a reasonable doubt that Petway was a willful member of a conspiracy to distribute cocaine. See Jackson v. Virginia, 443 U.S. 307 (1979). Likewise, there is also ample evidence to support Petway's conviction for possession with intent to distribute cocaine. When Petway was arrested he was, in fact, in possession of the cocaine. The fact that Petway told law enforcement officials before they opened the box that he did not "know anything about any drugs in there" belies his argument that he lacked knowledge of the presence of cocaine in the box.
 
 
 16
 Additionally, we reject Petway's argument that his fourth amendment rights were violated by the search of his package by employees of American Airlines and by Agent Marcello of the Drug Enforcement Agency. In United States v. Jacobson, 466 U.S. 109 (1984), the Supreme Court rejected this same argument in a case presenting very similar facts.
 
 
 17
 We have carefully examined Petway's remaining arguments and find them to be meritless. Therefore, we affirm.
 
 
 
 *
 The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation