JUDGE MAZZANT
This matter is before the Court on Defendants Laura and Mark Jordan's Motion to Permit Extrinsic Evidence of Bias and Motive of Government Witness [Dkt. # 136],[1] which, after careful consideration, will be granted.
*666 BACKGROUND
The Government alleges that, while serving as Mayor of Richardson, Defendant Laura Jordan (the "Mayor") exchanged votes on apartment development projects for cash, sex, and luxury hotel stays, among other benefits from fellow Defendant Mark Jordan, the apartment developer. The Government charges the Jordans with the violation of various bribery statutes on this basis. The Jordans, on the other hand, contend that any items or benefits exchanged were given as part of their romantic relationship and not a scheme to engage in bribery. That is, they primarily dispute that they intended to either offer or accept a bribe.
This motion turns on whether to allow the Jordans to introduce evidence purportedly probative of Government Witness Sarah Catherine Norris' motive to lie about some or all of her testimony. Ms. Norris owned a fifty percent share of Sooner Management with Mr. Jordan, with whom she had a romantic relationship. She was also a "Confidential Human Source" for the FBI. Ms. Norris made several statements highly damaging to the Jordans' defense. This includes testimony that Mr. Jordan told her he was only "using" the Mayor to secure votes for the development project, that he and Ms. Jordan had started a romantic relationship before Ms. Jordan cast her votes for the project, that she repeatedly warned him about the liability he might face for his relationship with the Mayor, and that she was so concerned about the residual liability she might face by being associated with Mr. Jordan that she ceded her fifty percent interest in Sooner Management without receiving a penny.
On cross examination, the Jordans probed Ms. Norris about the truth of her comments and the potential motives she may have had to lie on the stand. This meant pressing Ms. Norris to account for her alleged use of large amounts of Sooner Management funds to pay off personal credit card debts, among other financial transactions the Jordans found suspect. Ms. Norris, however, insisted that she did nothing wrong because she owned fifty percent of Sooner Management.
The Jordans subsequently indicated that "they w[ould] seek to introduce documents and expert testimony from a financial analyst and an IRS agent" (the "Proposed Evidence") that "w[ould] show that [Ms.] Norris stole over a million dollars from Sooner Management ... and then covered it up with company payroll records and by lying to the IRS" (Dkt. # 140 at p. 1).[2] The Government, in turn, objects that the Proposed Evidence is inadmissible. At the Court's request, the Parties then submitted briefs to supplement their respective positions (Dkt. # 136; Dkt. # 140). See supra note 1.
LEGAL STANDARDS
The federal rules of evidence are meant to "ascertain[ ] the truth and secur[e] a just determination." See FED. R. EVID. 102 ("These rules should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination."). Trial courts have "great discretion in passing on the admissibility of evidence" in fulfilling the mandate of the federal rules. See United States v. Pearson , 508 F.2d 595, 597 (5th Cir. 1975).
ANALYSIS
The Government argues that the Proposed Evidence is inadmissible under *667 Federal Rule of Evidence 608(b). This rule provides that (aside from an exception not applicable here) "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." FED. R. EVID. 608(b). The Fifth Circuit has explained that evidence introduced to show a specific "motive to lie in [a particular] case"-as opposed to a "general character for truthfulness"-is not governed by Rule 608. United States v. Skelton , 514 F.3d 433, 442 (5th Cir. 2008) ; see also United States v. Martinez , 962 F.2d 1161, 1165 (5th Cir. 1992) ("Extrinsic evidence may, however, be admissible for another purpose-for example, if it tends to show bias in favor of or against a party."). This is because, unlike evidence about prior acts that show a general tendency to lie, " 'proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.' " Skelton , 514 F.3d at 433 (quoting United States v. Abel , 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) ).
Although the Government argues otherwise, the Proposed Evidence plainly concerns Ms. Norris' motivations to lie. Ms. Norris testified that she repeatedly warned Mr. Jordan about the liability he may face due to his relationship with the Mayor. She also testified that she was so concerned that she might be (unfairly) implicated by Mr. Jordan's conduct that she ceded her half interest in Sooner Management without receiving a cent in return. Evidence tending to show that Ms. Norris was embezzling over a million dollars from Sooner Management suggests that Ms. Norris divested her interest in the company due to concerns about the consequences of her own potentially illegal conduct-not Mr. Jordan's. See id. at 441 (finding that the district court erred by excluding evidence under Rule 608 concerning whether the alleged victim stole from the defendants since the evidence was not introduced to show "a propensity to lie generally " but "to show that Jacobs ha[d] a motive to lie about the alleged threat in this case, i.e. , to divert attention from his own alleged misdeeds and win favor with the Government") (emphasis in original). Relatedly, as the Jordans have noted in court, this evidence tends to show that Ms. Norris cooperated with the FBI "to divert attention from [her] own alleged misdeeds" and draw attention to Mr. Jordan's.[3] See id. The Government questions why Mr. Jordan has not brought a civil suit if Ms. Norris has, in fact, embezzled over a million dollars from Sooner Management. But this argument goes to the weight of the Proposed Evidence, not its admissibility. See FED. R. EVID. 401 (explaining that evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."). Rule 608 does *668 not render the Proposed Evidence inadmissible for these reasons.[4]
But evidence concerning bias or a motive to lie, like all relevant evidence, may still be inadmissible under Rule 403 if its probative value is "substantially outweighed" by the undue problems it may posse. FED. R. EVID. 403. The Government argues that Rule 403 renders the Proposed Evidence inadmissible here. It notes that any probative value from the Proposed Evidence is low in light of other evidence supporting the topics covered in Ms. Norris' testimony, suggesting Ms. Norris' motive to lie is not especially important. The Government also notes that the Jordans had leeway to explore their theory on Ms. Norris' motive to lie on cross examination.
The Court is unconvinced. Ms. Norris appears to be one of the Government's star witnesses-in terms of the breadth of her testimony and her unique position to speak to Mr. Jordan's personal and business affairs. This makes evidence on any potential motive for Ms. Norris to lie especially probative, even if the Government (unsurprisingly) does not have to rely solely on her to prove its case. See Aetna Ins. Co. v. Paddock , 301 F.2d 807, 812 (5th Cir. 1962) (reversing a district court for excluding evidence of a "key" witness' motive to lie).[5] For instance, although there is likely other evidence of Mr. Jordan's intent to exchange a bribe in the record, the Court can think of little evidence as powerful (if believed) than Ms. Norris' statements that she warned Mr. Jordan about his potential liability and gave up her fifty percent stake in Sooner Management solely out of concerns about the residual liability she might face as his business partner. See United States v. Newell , 315 F.3d 510, 523 (5th Cir. 2002) (explaining that evidence that illustrated that the defendant's in-house accountant's concerns about billing practices indicated that those billing practices were so poor that the defendant, herself, should have known the charges were false). These statements are especially damaging because the Jordans' defense turns almost entirely on whether cash (and other benefits) were exchanged with an intent to bribe or simply as part of the Jordans' romantic relationship.
Additionally, although the Jordans crossed Ms. Norris on her use of Sooner Management funds, her responses that her transactions were entirely proper due to her fifty percent ownership in Sooner Management would be left largely unchallenged without the evidence the Jordans seek to present. See United States v. Leslie , 759 F.2d 366, 379 (5th Cir. 1985) (explaining that "the party challenging the witness should be afforded an opportunity to pursue all relevant lines of inquiry aimed at discovery and disclosing such bias," through cross-examination "or by introducing extrinsic evidence demonstrating the witness's bias") (emphasis added).[6]
*669 The question, then, is whether the high probative value of the Proposed Evidence is nevertheless "substantially outweighed" by the problems that evidence may pose. See FED. R. EVID. 403. The Government warns of the "risks of 'unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, [and] needlessly presenting cumulative evidence' " (Dkt. # 140 at p. 9) (quoting FED. R. EVID. 403 ). The Government specifically cites:
The likelihood of a confusing sideshow ... given that the defendants plan to call [two] witnesses who will present expert financial testimony about Norris' alleged theft and coverup-all of which testimony would be unrelated to the other (substantial and necessary) financial evidence in the case.
(Dkt. # 140 at p. 9).
The Court is less concerned. As an initial matter, the Government made Ms. Norris' credibility an issue by calling on her as a witness. See Aetna , 301 F.2d at 812 ("Facts wholly immaterial, or prejudicial to one of the parties on the main issue, may be material as affecting the credibility of a witness."). This potentially makes any prejudice, confusion, or delay resulting from the Proposed Evidence neither "unfair" nor "undue." See United States v. Frankenthal , 582 F.2d 1102, 1107 (7th Cir. 1978) ("Frankenthal has thus taken the position that she should have been given the benefit of Berk's testimony without having his credibility attacked on the basis of facts well known to her before she called Berk to testify. This consideration is not irrelevant in deciding whether any prejudice created was 'unfair' within the meaning of Rule 403.").[7]
Regardless, the Court fails to see how allowing two additional witnesses to testify-when the Government, alone, has presented over forty-will cause the confusion or sideshow the Government fears. Although there may be a scenario where discussions of finances introduced to prove bias or motive might unduly confuse or mislead the jury, the financial determinations in this case are neither complex nor all that similar to the finances at issue in the Proposed Evidence. The Government has effectively and repeatedly emphasized that this case concerns whether Mr. Jordan gave the Mayor large sums of cash in an attempt to influence her votes. The Court has faith that evidence of Ms. Norris embezzling funds from Sooner Management would not confuse the jury on the primary issues they must decide-let alone cause the type of confusion that "substantially outweighs" the probative value of evidence of a star witness' motive to lie about important evidence. See Aetna , 301 F.2d at 812 (reversing a district court because it excluded evidence of a "key" witness' motive to lie, thereby causing "harmful error").[8]
*670 CONCLUSION
Acting on its "great discretion" to decide the admissibility of evidence to "ascertain[ ] the truth and secur[e] a just determination," the Court GRANTS the Jordans' Motion to Permit Extrinsic Evidence of Bias and Motive of Government Witness [Dkt. # 136], thereby OVERRULING the Government's Objections.

Although stylized as a "motion," the Court notes that this brief was filed at the Court's request after the Government filed objections to the evidence the Jordans hope to admit.

This statement is based on the Government's characterization of the evidence at issue, which the Court accepts since it would not impact the Court's conclusion, regardless.

In the Government's supporting brief, the Government states that the Defendants did not argue that this evidence is being introduced to show that Ms. Norris may be lying simply to divert law enforcement's attention away from her illegal conduct. The Court acknowledges that this argument is not explicitly referenced in the Jordans' motion. However, the Jordans have made this argument in open court and, as explained, these briefs filed were meant to supplement those arguments, not supersede them. Regardless, the federal rules are meant to be interpreted to "ascertain[ ] the truth" and "secur[e] a just determination," see Fed. R. Evid. 102, not " 'blind' " and " 'rigid application,' " see Skelton , 514 F.3d at 442 (quoting United States v. Opager , 589 F.2d 799, 801 (5th Cir. 1979) ); see also Fed. R. Crim. P. 2 ("These rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay.").

The Jordans also suggest that evidence that Ms. Norris embezzled money from Sooner Management suggests that she dislikes Mr. Jordan-an argument which the Government suggests "would swallow the rule against extrinsic evidence" whole (Dkt. # 140 at p. 3). The Court need not rule on this argument now in light of the other reasons to find the Proposed Evidence admissible.

See also United States v. Jiminez , 564 F.3d 1280, 1288 (11th Cir. 2009) ("Undeniably, the evidence was probative because it rebutted the suggestion that Detective Wharton, an important witness, was lying about his interview with the defendant.").

See also United States v. Robinson , 530 F.2d 1076, 1080 (D.C. Cir. 1976) ("[T]he trial judge did not abuse his discretion in admitting Walker's rebuttal testimony. It was probative of bias, for it showed that witness Luke was in a joint business enterprise with defendant, a business in which they were both adversaries of the police[ ] and ... not remote in time but an ongoing affair related in subject matter and time to the transactions charged against defendant ... Of course, the evidence of Luke's sales to Walker tended to undercut Luke's testimony and the credibility of appellant's alibi, but this was part of the price to defendant of offering for his alibi a witness who could be impeached for bias.").

See also Robinson , 530 F.2d at 1080 ("[T]he rebuttal testimony was not directed at generally discrediting Luke's character or veracity, but was aimed at showing specific matters that were probative of Luke's bias in favor of defendant and against the government. In their testimony on direct, defendant and his alibi witness attempted to paint a picture of a simple friendship involving periodic loans to each other and forswore any contact with Walker. On cross, they maintained this view, specifically denying the existence of any business relationship and having spoken to or sold drugs to Walker. We hold that it was open to the government to show that there was more here than a simple friendship , to reveal aspects of Luke's relationship evidencing a special partiality toward defendant and particular motive to testify falsely on his behalf.") (emphasis added).

See also Frankenthal , 582 F.2d at 1107 ; Robinson , 530 F.2d at 1080 (each finding that a trial court acted within its wide discretion in admitting extrinsic evidence of a witness' motive to lie).