UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-5585

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RODOLFO MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

(June 3, 1992)

Before DAVIS, JONES, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA:

Rodolfo Martinez was convicted of possession of a firearm by a felon, a violation of 18 U.S.C. § 922(g)(1), and sentenced to fifteen years imprisonment.[1] Martinez appeals, asserting that the district court erred in admitting extrinsic evidence regarding the alleged prison gang membership of Martinez's sole defense witness, and that there is insufficient evidence to support his enhanced sentence under 18 U.S.C. § 924(e)(1). Finding no error, we affirm Martinez's conviction and sentence.

_____

[1] The district court also imposed a five-year term of supervised release and a $50 special assessment.

On the evening of September 26, 1989, San Antonio police officer Daniel Robles was working street patrol duty in a marked police car. At approximately 10:30 p.m., Robles observed Martinez and Tony Rodriguez--a man Robles recognized from previous arrests and encounters--running across Guadalupe Street. His suspicions aroused, Robles decided to follow the two men to determine why they were running. Robles passed Martinez and Rodriguez and then positioned his police car so that it was facing them.

After seeing Robles, Rodriguez and Martinez both slowed to a fast walk--Martinez following approximately twelve feet behind Rodriguez. Using the side spotlights on his patrol car, Robles illuminated the two suspects. Robles, still in the police car, saw Rodriguez reach into his left pocket and drop a gun to the ground. Concerned for his safety, Robles called for backup. With his service revolver drawn, Robles got out of his police car and told Rodriguez and Martinez to put their hands up. Martinez stopped, turned away from Robles, and refused to raise his hands as instructed. At that time, Robles saw a gun fall to the sidewalk between Martinez's feet. Martinez then raised his hands and turned around to face Robles. Shortly thereafter, another police officer arrived at the scene and Martinez and Rodriguez were arrested.

Robles recovered both discarded guns and carved his initials on the weapon that he had seen fall between Martinez's feet. While transporting both men to the police station for processing, Rodriguez told Robles that both of the guns were his.

At trial, Rodriguez--Martinez's sole defense witness-- testified that, on the night of the arrest, he had both guns in his possession, and that he dropped the first upon seeing Robles and the second when Robles approached them. Rodriguez testified that Robles did not see him drop the first gun, but did observe him throw the second gun to the ground. Rodriguez explained that he dropped both guns because he did not want Robles to find him in actual possession of the weapons.

During cross-examination and over Martinez's objection, the district court allowed the government to ask Rodriguez whether he was a member of a prison gang called the "Mexican Mafia."[2] After Rodriguez denied any affiliation with the Mexican Mafia, the government, again over Martinez's objections,[3] elicited rebuttal testimony from Valentine Lopez--an intelligence officer with the San Antonio Police Department. Lopez testified that one of the tenets of the Mexican Mafia is that members look out for each other and would not hesitate to come to court to testify untruthfully. Additionally, Lopez testified that he *knew* Rodriguez was a member of the gang and he also *believed* Martinez was a member. Martinez, however, did not object that Lopez lacked personal knowledge to testify that Martinez was a member of this gang. *See* Fed. R.

_____

[2] The Mexican Mafia gang is also known by its Spanish name, "La `M'." The majority of members of the gang are either convicts or former convicts.

[3] Martinez objected to the admission of prison gang affiliations, arguing that such testimony violated Rule 608(b) of the Federal Rules of Evidence. The district court overruled his objection on the basis of *United States v. Abel*, 469 U.S. 45, 105 S. Ct. 465 (1984). *See also infra* note 4.

3

Evid. 602 ("a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

At the charge conference, after the parties rested, Martinez moved, for the first time, to strike the testimony of witnesses regarding gang membership.[4] The district court denied Martinez's motion but instructed the jury to consider evidence of gang membership only to decide whether Rodriguez was biased in favor of or against any party, and for no other purpose.[5] Martinez was

---

[4] Defense counsel stated:
> I do need to put on the record that . . . in response to the court's request when the court overruled my objection pursuant to 608(b) of the Federal Rules of Evidence concerning any testimony relating to the gang and gang membership, and also in response to my objection which was overruled, as to the extrinsic evidence that the witness testified to regarding a gang membership and their [tenets], and their rules and things that the gang stands for.
> The instruction that I have submitted to the court does not cure the error, your Honor, that occurred when that evidence came in, but I am complying with the court's request that I submit an instruction. But I, at this time would move to strike the testimony of the other witnesses concerning gang membership. Again, renewing my objection which was made under 608(b) in order to preserve the record and also move for a mistrial because the court's instruction does not cure the error that occurred.

Record on Appeal, Vol. 11 at 104-05, *United States v. Martinez*, No. 91-5585 (5th Cir. filed June 14, 1991) ["Record on Appeal"].

[5] The district court instructed the jury:
> Your job is to think about the testimony of each witness you have heard and decide how much you believe of what each witness had to say.
> You have heard the evidence of the alleged gang membership of a witness, Tony Rodriguez. You are to consider the evidence of gang membership only in deciding

4

convicted under 18 U.S.C. § 922(g)(1), and the district court sentenced him pursuant to the sentence enhancement provision of 18 U.S.C. § 924(e)(1).

## II

### A

Martinez contends the district court abused its discretion by allowing Lopez to testify that Rodriguez was a member of the Mexican Mafia prison gang to show bias on Rodriguez's part. According to Martinez, Lopez's testimony improperly attacked Rodriguez's credibility through evidence of specific instances of conduct, a violation of Rule 608(b) of the Federal Rules of Evidence. Specifically, Martinez reasons that, without evidence that Martinez was a Mexican Mafia member, Lopez's testimony about Rodriguez and the Mexican Mafia, even if true, is not probative of Rodriguez's bias.

---

whether the witness maintained a bias for or against any party.

You are not to consider the evidence of gang membership as proof of the defendant's guilt of the charge in the indictment.

Also, you are not to consider the evidence of gang membership as to whether Tony Rodriguez was a credible witness, but only as to whether he has a bias.

Bias is a term used in the . . . "common law of evidence" . . . to describe the relationship between a party and a witness, which might lead the witness to slant unconsciously or otherwise his testimony in favor of or against a party.

Bias may be induced by a witness's like, dislike or fear of a party, or by the witness's self-interest.

Record on Appeal, Vol. 11. at 113-14.

In considering Martinez's challenge to the admission of Lopez's testimony, we employ a deferential abuse of discretion standard of review. *See United States v. Duncan*, 919 F.2d 981, 985 (5th Cir. 1990) (citations omitted), *cert. denied*, 111 S. Ct. 2036 (1991); *United States v. Bratton*, 875 F.2d 439, 443 (5th Cir. 1989) (citation omitted). In most instances, Rule 608(b) of the Federal Rules of Evidence prohibits the admission of extrinsic evidence solely for the purpose of attacking the credibility of the witness. *See* Fed. R. Evid. 608(b);[6] *see also United States v. Farias-Farias*, 925 F.2d 805, 809 (5th Cir. 1991) (citation omitted); *United States v. Diecidue*, 603 F.2d 535, 550 (5th Cir. 1979) (citations omitted), *cert. denied sub nom.*, 445 U.S. 946, 100 S. Ct. 1345 (1980). Extrinsic evidence may, however, be admissible for another purpose--for example, if it tends to show bias in favor of or against a party. *See United States v. Abel*, 469 U.S. 45, 56, 105 S. Ct. 465, 471 (1984) (holding that impeachment evidence inadmissible under 608(b) may be admissible for another purpose, as "[i]t would be a strange rule of law which held that relevant, competent evidence which tended to show bias on the part of a witness was nonetheless

_____

[6] Rule 608(b) reads, in relevant part:
**Specific instances of conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

inadmissible because it also tended to show that the witness is a liar"); *see also United States v. Thorn*, 917 F.2d 170, 176 (5th Cir. 1990) ("An exception to the prohibition against the use of extrinsic evidence to attack the credibility of a witness exists in cases in which the evidence tends to show bias or motive for the witness to testify untruthfully."), *citing Diecidue*, 603 F.2d at 550. The probative value of admitting the extrinsic evidence must substantially outweigh any prejudicial effect under Rule 403 of the Federal Rules of Evidence. *See Farias-Farias*, 925 F.2d at 809; *see also Thorn*, 917 F.2d at 176 (under general mandate of Rule 403, "district judge should exclude evidence if its prejudicial effect outweighs its probative value").

In *Abel*, the Supreme Court found that a gang member's testimony that the defendant and a defense witness were members of the same gang and that it was characteristic of members of this gang to do anything to help each other--including steal, cheat, kill or lie--was permissible extrinsic evidence of bias. *See Abel*, 469 U.S. at 49, 105 S. Ct at 467. The Court reasoned that evidence of the possible bias of a witness is relevant because "[a] successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony." *Id*. at 51, 105 S. Ct. at 468. The Court stated that "[a] witness' and a party's common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias." *Id*. at 52, 105 S. Ct at 469.

7

Martinez proffers many reasons why *Abel* does not control this case[7] and, therefore, why the district court abused its discretion in admitting Lopez's testimony. Martinez's reasons need not long detain us, however, because, without passing on the propriety of the admission of Lopez's testimony, we conclude that Martinez's failure to timely object is dispositive of Martinez's appellate challenge regarding the admission of the evidence.

In order to preserve a claim of error for appellate review, a party must timely object or move to strike the objectionable evidence, stating the specific ground of the objection. *See* Fed.

---

[7]    Martinez suggests:
*Abel* does not control the outcome of this case. The witness in *Abel* was an admitted member of the gang, who could testify to the tenets of the gang from personal knowledge. Here, Officer Lopez was not able to testify from his personal knowledge that the gang members were pledged to perjure themselves in court to help other members, but simply offered his opinion that members of the gang would be willing to lie in court. . . . Moreover, Lopez was unable to positively identify Rodriguez as a gang member; he merely believed Rodriguez to be a member of the gang because Rodriguez sometimes associated with members of the gang. . . . Most important, Lopez was unable to testify that the Defendant was a member of the gang . . . Without evidence that the Defendant was a gang member, Lopez's testimony about the gang and Rodriguez, even if true, is not probative of bias; it does not provide any reason why Rodriguez would be biased in favor of a person who was not a member of the gang. *Abel* was premised on the witness's and party's common membership in an organization. *Abel*, 469 U.S. at 52. Since that common membership was lacking in this case, the testimony was not proper extrinsic evidence of bias, but instead was extrinsic evidence attacking Rodriguez's credibility.
Defendant's Brief on Appeal at 12, *United States v. Martinez*, No. 91-5585 (5th Cir. filed August 12, 1991). Martinez, however, did not object to, or move to strike, the testimony of Officer Lopez-- that he *believed* Martinez was a gang member--for lack of personal knowledge. *See* Fed. R. Evid. 602.

8

R. Evid. 103(a)(1).[8]  Martinez's motion to strike was not

contemporaneous with the admission of Lopez's testimony.[9]  Indeed,

---

[8]  Rule 103(a)(1) of the Federal Rules of Evidence provides in part:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
> . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context . . . .

Fed. R. Evid. 103(a)(1); *see also United States v. Jiminez Lopez*, 873 F.2d 769, 773 (5th Cir. 1989) ("Federal Rule of Evidence 103(a)(1) requires a `timely objection or motion to strike . . . stating the specific ground of objection, if the specific ground is not apparent from the context . . . .'"), *quoting* Fed. R. Evid. 103(a); *Pregeant v. Pan American World Airways*, 762 F.2d 1245, 1248 (5th Cir. 1985) ("To preserve a claim of error for appellate review there must be a timely objection or motion to strike, expressly stating the grounds for inadmissibility") (citations omitted); *United States v. Grant*, 519 F.2d 64, 66 n.3 (5th Cir. 1975) (a litigant's failure to timely object or move to strike admission of objectionable evidence is characterized as a waiver of appeal based upon erroneous admission of evidence) (citation omitted) .

[9]  On direct examination, Rodriguez testified that he had possessed both guns Robles later retrieved from the scene of the arrest.  Before beginning cross-examination, the prosecutor informed the district court and defense counsel of his intent to cross-examine Rodriguez about his involvement in the Mexican Mafia. If Rodriguez denied membership in the Mexican Mafia, the prosecutor continued, he would call Lopez as a rebuttal witness to testify to Rodriguez's Mexican Mafia membership as well as to the tenets of the organization.  Martinez objected to the introduction of this evidence as barred by rules 608(b) and 609 of the Federal Rules of Evidence.  Relying on *Abel*, however, the district court ruled that the prosecutor would be permitted to cross-examine Rodriguez regarding the Mexican Mafia, and would be permitted to call Lopez as a rebuttal witness if Rodriguez denied membership in the gang.
   On cross-examination, Rodriguez stated that he had heard of "La `M'," but that he did not know anything about the organization or its operations.  Lopez then took the stand and testified that the gang was started in 1984 or 1985 and the majority of the members are convicts or former convicts.  He testified further:

> The Mexican Mafia believe in mainly, they work a lot with drugs, narcotics, prostitution.  They take care of themselves a lot.  They look for each other.  They'll cover each others back.  By that I mean they'll, if one

9

Martinez did not make a motion to strike until the charge conference--after both sides had rested. Had Martinez timely objected to Lopez's testimony, Martinez could then have shown that he was not a Mexican Mafia gang member, that Rodriguez was not a Mexican Mafia gang member, and why *Abel* does not apply. He did not. Moreover, even when he moved to strike, apart from contending that the evidence violates 608(b), Martinez did not expressly articulate the asserted grounds for inadmissibility under *Abel*, referring vaguely and generally to "any testimony relating to the gang membership." Moreover, he did not object on the grounds that Lopez lacked personal knowledge to testify about "La `M'" or membership in "La `M'"--specifically he failed to object that Lopez lacked personal knowledge to testify that Martinez was a member of "La `M'." We conclude, therefore, that Martinez's failure to timely and specifically object to the introduction of Lopez's testimony precludes our review of the propriety of the admission of this evidence.[10]

---

is in trouble, the rest of the members are going to try
to help them out if they can.
Record on Appeal, Vol. 11 at 95. After Lopez was examined and cross-examined, the defense rested. The district court then recessed. When the court reconvened, the charge conference ensued and, at the conference, Martinez referred to his rule 608(b) objection and moved then to strike the testimony of witnesses regarding gang membership.

[10] In any event, when there is no objection to evidence, we review its admission for plain error. "[P]lain error is an error `so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice.'" *United States v. Fortenberry*, 914 F.2d 671, 673 (5th Cir. 1990), *cert. denied*, 111 S. Ct. 1333 (1991), *quoting United States v. Graves*, 669 F.2d 964, 971 (5th Cir. 1982) (other citations omitted); *see*

Martinez was convicted of violating 18 U.S.C. § 922(g)(1)[11] and challenges the district court's application of the sentence enhancement provision of 18 U.S.C. § 924(e), which provides that a person who violates section 922(g) shall be "imprisoned not less than fifteen years" if that person has three prior convictions for a violent felony. Martinez asserts that the evidence is insufficient to demonstrate that his prior state convictions used for enhancement purposes were for violent felonies. Specifically, Martinez contends that the district court must look at the precise statutory definition of the prior offenses and, because the government introduced proof only in the form of judgments of

_____

*also* Fed. R. Evid. 103(d) ("Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.") Martinez has not shown how the admission of Lopez's testimony affected the fairness of the judicial proceedings or would result in a miscarriage of justice. Thus, we do not find plain error. *See Fortenberry*, 914 F.2d at 637-38 (no plain error due to district court's admission of evidence where district court weighed the admission of the evidence in a pre-trial hearing and concluded it should be received and prosecutor used the evidence for a permissible purpose); *see also United States v. Howton*, 688 F.2d 272, 278 (5th Cir. 1982) (no plain error due to admission of evidence related to a murder of a subpoenaed grand jury witness where the evidence was not irrelevant to any issue in the case).

[11] Section 922(g)(1) prohibits any person from possessing a firearm who has been convicted of "a crime punishable by imprisonment for a term exceeding one year".

conviction,[12] the record does not support a finding of violent felonies sufficient to enhance Martinez's sentence.

The government responds by suggesting that the sentencing court can, and here did, take judicial notice of the public laws of a state. The government argues further that, even though Martinez complains that there is nothing in the record to indicate which particular Texas statute he was convicted under, Martinez himself did not show that he was convicted under a different statute which lacked the elements necessary to qualify as a "violent felony." Moreover, the government argues, the district court need only find "sufficient indicia of reliability to support probable accuracy." *United States v. Smith*, 930 F.2d 1081, 1090 (5th Cir. 1991), *quoting* U.S.S.G. § 1B1.3 (although controlled substance defendant manufactured was not specifically identified at sentencing hearing, taking judicial notice that state law conviction constitutes "serious drug offense" under guideline).

If a defendant is convicted for a violation of 18 U.S.C. § 922(g), the sentencing court must determine whether the defendant has three prior felony convictions for serious drug offenses, violent felonies, or both. *See* 18 U.S.C. § 924(e)(1). The definition of "violent felony" is contained at section

---

[12] At the sentencing hearing, Martinez did not object to the names of the offenses for which he was convicted, as set forth in the presentence report: (i) aggravated rape (committed 1-30-81; found guilty 7-23-81); (ii) aggravated assault with a deadly weapon (committed 3-22-87; plead guilty 7-30-87); and (iii) burglary of a building with intent to commit theft (committed 1-08-86; plead guilty 7-21-86). The government did not present either the indictments or jury instructions for Martinez's Texas state court convictions.

924(e)(2)(B)[13] which authorizes three ways in which a defendant's prior conviction may be found to be a "violent felony":

> 1) under part (i) of § 924(e)(2)(B), the offense might have as an element the use, or attempted or threatened use, of physical force against another person; 2) under part (ii) of § 924(e)(2)(B), the offense could be burglary, arson, extortion, or involve the use of explosives; or 3) also under part (ii) of § 924(e)(2)(B), the offense could otherwise involve conduct that presents a serious potential risk of physical injury to another.

*United States v. Martinez*, 954 F.2d 1050, 1052 (5th Cir. 1992). A district court's decision whether a defendant's three previous convictions were for violent crimes must be made in accordance with the law of the jurisdiction in which the defendant was convicted. *See United States v. Vidaure*, 861 F.2d 1337, 1340 (5th Cir. 1988) ("[A] determination of whether a crime is a violent felony requires an examination of applicable state law. . . ."), *cert. denied*, 489 U.S. 1088, 109 S. Ct. 1551 (1989).

The district court based the enhancement of Martinez's sentence upon an enhancement information filed by the government that identifies three prior felony convictions for Martinez, all in Texas state courts--one conviction for aggravated assault, one for aggravated rape and one for burglary of a building with intent to

---

[13] [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that--
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B) (footnote omitted).

13

commit theft. In support of enhancement, the government also offered copies of the judgments rendered for Martinez's state court convictions. At the sentencing hearing, Martinez objected, contending that enhancement is impermissible based on judgments of convictions for prior offenses identified only as "aggravated assault with a deadly weapon," "aggravated rape," or "burglary of a building with intent to commit theft." The district court, relying upon statutes the government cited, analyzed whether Martinez's prior offenses constituted violent felonies and, after concluding they did, sentenced Martinez under the enhancement provision of 18 U.S.C. § 924(e)(1).

The "penitentiary packets" offered by the government indicated that Martinez had been convicted three times for committing violent felonies: (i) a July 30, 1987 conviction for aggravated assault, (ii) a July 23, 1981 conviction for aggravated rape, and (iii) a July 21, 1986 conviction for burglary of a building with intent to commit theft. Under *Taylor*, a district court need "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 110 S. Ct. 2143, 2160 (1990) (footnote omitted) (Holding that "an offense constitutes `burglary' for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to `generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant."). Because the

14

offense of aggravated assault[14] and the offense of aggravated rape[15]

_____

[14]    Section 22.01(a) of the Texas Penal Code provides:
A person commits an offense if the person:
(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; or
(2) intentionally or knowingly threatens another with imminent bodily injury; or
(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.
Tex. Penal Code Ann. § 22.01(a) (West 1974) (titled "Assault"), _quoted as amended by_ Sexual Assault and Aggravated Sexual Assault, 68th Leg., ch. 977, sec. 1, 22.01(a), eff. Sept. 1, 1983.
Section 22.02(a) of the Texas Penal Code provides:
A person commits an offense if the person commits assault as defined in Section 22.01 of this code and the person:
(1) causes serious bodily injury to another, including the person's spouse;
(2) causes bodily injury to a peace officer when the person knows or has been informed the person assaulted is a peace officer:
        (A) while the peace officer is lawfully discharging an official duty; or
        (B) in retaliation for or on account of the peace officer's exercise of official power or performance of official duty as a peace officer; or
(3) causes bodily injury to a participant in a court proceeding when the person knows or has been informed the person assaulted is a participant in a court proceeding:
        (A) while the injured person is lawfully discharging an official duty; or
        (B) in retaliation for or on account of the account of the injured person's having person's having exercised an official power or performed an official duty as a participant in a court proceeding; or
(4) uses a deadly weapon.
Tex. Penal Code Ann. § 22.02(a) (West 1974) (titled "Aggravated Assault"), _quoted as amended by_ Sexual Assault and Aggravated Sexual Assault, 68th Leg., ch. 977, sec. 1, 22.01(a), eff. Sept. 1, 1983.
Subsequent to the time Martinez committed this offense (March 22, 1987), sections 22.01 and 22.02 were amended further. _See_ Tex. Penal Code Ann. §§ 22.01, 22.02 (West 1989 & Supp. 1992).

[15]    Section 21.02(a) of the Texas Penal Code provides;
**§ 21.02.    Rape**
(a) A person commits an offense if he has sexual intercourse with a female not his wife without the female's consent.
Tex. Penal Code Ann. § 21.02(a) (West 1974) (repealed in 1983).

15

both require proof of the use or threat of physical force, and the statutory definition of burglary[16] substantially corresponds to the definition of generic burglary--as required by *Taylor*, 110 S. Ct. at 2160[17]--Martinez's prior convictions all qualify as violent felonies under the standards set forth in 18 U.S.C. § 924(e). Accordingly, we find that the district court properly concluded that Martinez's prior convictions were for violent felonies.

## III

For the foregoing reasons, we AFFIRM Martinez's conviction and sentence.

---

Section 21.03(a) provides:
**§ 21.03    Aggravated Rape**
(a) A person commits an offense if he commits rape as defined in Section 21.02 of this code . . . and he:
    (1) causes serious bodily injury or attempts to cause death to the victim or another in the course of the same criminal episode;
    or
    (2) compels submission to the rape by threat of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone.
Tex. Penal Code Ann. § 21.03(a) (West 1974) (repealed in 1983).

[16]    Section 30.02(a) of the Texas Penal Code provides:
**§ 30.02    Burglary**
(a) A person commits an offense if, without the effective consent of the owner, he:
(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft; or
(2) remains concealed, with intent to commit a felony or theft, in a building or habitation; or
(3) enters a building or habitation and commits or attempts to commit a felony or theft.
Tex. Penal Code Ann. § 30.02(a) (West 1974).

[17]    *See United States v. Silva*, 957 F.2d 157, 162 (5th Cir. 1992) (applying *Taylor* reasoning and holding that defendant's burglary convictions indicate he was found guilty of all essential elements comprising generic burglary).