**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 92-5568

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

BEVERLY A. WALDRIP,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Texas

(January 14, 1993)

Before REAVLEY, SMITH and DeMOSS, Circuit Judges

DeMOSS, Circuit Judge:

By superseding indictment, Beverly A. Waldrip (Waldrip) was indicted for executing a scheme to defraud Allied American Bank of San Antonio and Texas Commerce Bank-San Antonio in violation of 18 U.S.C. § 1344 (counts 1 and 2), and for knowingly making a false statement for the purpose of influencing the action of Texas Commerce Bank in violation of 18 U.S.C. § 1014 (count 3).

A jury found Waldrip guilty on all three counts. The district court sentenced Waldrip to two years of imprisonment on counts 1 and 2, to run concurrently, and to two years imprisonment on count 3, to run consecutively to the other sentence. The district court

suspended execution of the sentence on count three, and Waldrip was placed on probation for five years after she serves the sentence imposed on counts 1 and 2. The district court ordered Waldrip to pay a special assessment of $150, pursuant to 18 U.S.C. § 3580 and Waldrip was also ordered to pay restitution, $122,461.99 to First Interstate Bank and $59,213 to Texas Commerce Bank. However, Waldrip did not have the financial means to pay the total amount of restitution, therefore, she was ordered to pay partial restitution, $12,246.19 to First Interstate Bank and $5,921.30 to Texas Commerce Bank. Waldrip appeals her conviction. After careful consideration, we affirm the conviction.

## I. Facts

In 1983 three different banks--Texas Commerce Bank (TCB), Northside State Bank (NSB), and Allied American Bank (AAB) funded a real estate development project in San Antonio, Texas, known as the Retreat at Glen Heather (the Project). The Project involved the financing and developing of condominiums and raw land. In late 1985, the borrowers took the Project into bankruptcy because the loans were past due and the banks were in a position to foreclose. Although the banks did not foreclose, they sought to refinance the Project with new investors. To achieve that end, the banks sold the Project (with financing) to First Center of Texas, an investment group headed by Steve Morriss (Morriss). Morriss intended to recruit purchasers of the 32 condominium units and ultimately to develop the lots. The banks gave Morriss until February 15, 1986 to recruit investors. Morriss brought in Waldrip

2

as an investor, who in turn, recruited Doyle Harrell as another investor.  In connection with the investment, a loan application was submitted to the banks in the names of Doyle Harrell and his wife Bernice Harrell.  The banks required both Mr. and Mrs. Harrell to sign the loan documents.  The Harrell loan was approved with the Harrells as co-borrowers.

In June 1986, one of the borrowers asked the banks to change the payment date to a different day of the month.  In complying with the request, TCB sent a document to the Harrells for them to sign agreeing to the date change.  In response, Mrs. Harrell contacted TCB and told them that she knew nothing about the loan and had not signed the original loan documents.  TCB later learned that Waldrip had signed both Doyle and Bernice Harrells' names to the loan documents.[1]

Waldrip was indicted for scheming to defraud AAB and TCB in violation of 18 U.S.C. § 1344 (counts one and two), and for knowingly making a false statement for the purpose of influencing the action of TCB in violation of 18 U.S.C. § 1014 (count three). At trial, Waldrip claimed that she signed the loan documents only after Doyle Harrell assured her that he would provide her with a power of attorney for both himself and his wife.  When she learned that the powers of attorney would not be forthcoming, Waldrip claimed that she then made a "second set of documents" by whiting out the signatures on the original documents and making a copy of

_____

[1]  However, Waldrip is only charged with forging the signature of Bernice Harrell.

those original documents.  According to Waldrip, Doyle Harrell then signed his name to the "second set of documents" and she marked out the name of Bernice Harrell.  Waldrip claimed that she set aside the original documents on which she signed the Harrells' names, and left the "second set of documents" to be picked up by a courier.  Waldrip contended that the courier picked up the wrong set of documents.

## II.  Discussion

A.  **The Hill Letter**

Waldrip filed a pre-trial motion to suppress evidence of a separate transaction in which she signed Accountant Steve Hill's name to a letter that was subsequently sent to investors.  The district court elected to carry the motion as a motion in limine.  At trial, Waldrip elected to testify in her own behalf.  The government was allowed to use the Hill letter in cross-examining Waldrip pursuant to Federal Rule of Evidence 608(b) as a matter affecting her character for truthfulness.[2]

---

[2]  Specifically, Waldrip complains of the following exchange that took place during cross-examination:

GOVERNMENT:   . . . Your various signatures of Bernice Harrell's name isn't the first time you've signed somebody's name to a document without their permission, is it?

WALDRIP:  To a document?

GOVERNMENT:  That's right.  To  a document, a piece of paper.

WALDRIP:  No.  I've signed--yeah, I've signed people's names to things before.

GOVERNMENT:  In fact, approximately one year before the, one year and a few months before the Glen Heather incident, you had a partner in one of your companies, yours and your

4

husband's companies, by the name of Jim Cox, did you not?

WALDRIP:  Yes.

GOVERNMENT:  And he was an attorney, wasn't he?

WALDRIP:  Yes.

GOVERNMENT:  And he wanted to get out of the partnership, didn't he?

WALDRIP:  He wasn't actually in the partnership.  He had a right to exercise an option and he wanted to not do that so he wanted to not be a part of the company.

GOVERNMENT:  He wanted an accounting of partnership matters, didn't he?

WALDRIP:  Yes.

GOVERNMENT:  He wanted a financial statement from you, didn't he?

WALDRIP:  He wanted an accounting of four months' worth of activity.  Yes.

GOVERNMENT:  And you sent him a compiled financial statement or an informal financial statement, didn't you?

WALDRIP:  Yes.

GOVERNMENT:  And it had a cover letter on it, didn't it?

WALDRIP:  Yes.

GOVERNMENT:  And it was signed by Steve Hill, CPA, was it not?

WALDRIP:  Yes.  It was.

GOVERNMENT:  And in fact, Mr. Hill never signed it.  You signed it, didn't you?

WALDRIP:  Yes.  I did.

GOVERNMENT:  And you signed it without Mr. Hill's permission, didn't you?

WALDRIP:  I read it to him first.

5

By testifying, Waldrip put her character for truthfulness in issue. United States v. Williams, 822 F.2d 512, 516 (5th Cir. 1987). "Control over the conduct of a trial, including the scope of permissible cross-examination, is squarely within the discretionary powers of the district court, and its rulings will be disturbed on review only if the district court abuses that discretion." Id., citing United States v. Viera, 819 F.2d 498, 500 (5th Cir. 1987). The district court may under Rule 608(b)[3] determine if evidence is probative of truthfulness, and under Rule 403 exclude even probative evidence if the prejudicial effect outweighs the probative value. United States v. Farias-Farias, 925 F.2d 805, 809 (5th Cir. 1991).[4]

---

GOVERNMENT: Did you sign it without his permission?

WALDRIP: Yes.

[3] Rule 608(b) provides that:

[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative or truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, . . .

[4] Rule 403 provides:

[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Waldrip contends that the district court abused its discretion in admitting the letter because, even if a forgery, it is not probative of her character for truthfulness.  However, forgery has been held to be probative evidence of a witnesses' character for truthfulness.  United States v. Leake, 642 F.2d 715 (4th Cir. 1981).  In Leake, the court stated "Rule 608 authorizes inquiry only into instances of misconduct that are clearly probative of truthfulness or untruthfulness, such as perjury, fraud, swindling, forgery, bribery, and embezzlement." Id. at 718-719 (emphasis added).  We hold that the district court did not abuse its discretion when it allowed the government to cross-examine Waldrip concerning the letter because such misconduct was probative of Waldrip's character for truthfulness.[5]

Waldrip also argues that the probative value of the Hill letter is substantially outweighed by its prejudicial effect and is, therefore, inadmissible under Rule 403.  She asserts that this prior conduct was so similar to the transaction for which she was charged that the jury could easily infer that she was a forger in general.  This court has stated in United States v. Beechum, 582 F.2d 898 (5th Cir. 1978), cert. denied, 440 U.S. 920 (1979):

---

[5] In a related argument, Waldrip contends that the Hill letter was not forged because the government failed to prove that she intended to defraud someone.  This argument misses the point.  The government is not required, and in fact, is not allowed under Rule 608(b), to prove with extrinsic evidence the criminal intent behind the conduct.  United States v. Cohen, 631 F. 2d 1223, 1226-27 (5th Cir. 1980); United States v. Cole, 617 F.2d 151, 154 n. 3 (5th Cir. 1980).

> It is true as well that the more closely the extrinsic offense resembles the charged offense, the greater the prejudice to the defendant. The likelihood that the jury will convict the defendant because he is the kind of person who commits this particular type of crime or because he was not punished for the extrinsic offense increases with the increasing likeness of the offenses. Id. at 915 n. 20.

We agree with Waldrip that the conduct is very similar to the conduct for which she was on trial. Here, however, even if the prejudicial effect substantially outweighed the extrinsic act's probative value, any error in admitting it was harmless, given the overwhelming evidence of guilt.[6]

B. **Bribery**

Waldrip contends that the district court abused its discretion in allowing the government during cross-examination to introduce evidence that she had committed bank bribery. Waldrip similarly contends that evidence of bank bribery is not admissible under Rule 608(b) for impeaching her character for truthfulness and under Rule

---

[6] The other evidence against Waldrip is summarized as follows:

(1) Waldrip signed Bernice Harrell's name to Glen Heather documents on three occasions after she testified that she was aware that Bernice Harrell would not be participating in the Glen Heather project;
(2) the government's handwriting expert testified that Waldrip intentionally attempted to retrace and copy Mrs. Harrell's signature;
(3) Waldrip used different color ink to sign the signatures of Doyle and Bernice Harrell to the same document;
(4) Waldrip failed to sign the document in a way that would indicate that she was signing under the authority of a power-of-attorney;
(5) Doyle Harrell testified that he did not tell Waldrip that he would be able to get a power-of-attorney for his wife Bernice Harrell; and
(6) the notary whose signature appears on the loan documents testified that she did not notarize those documents.

403 because its prejudicial effect substantially outweighs its probative value. During the government's cross-examination, Waldrip testified that she paid Doyle Harrell $5,000 for introducing her to a banker and presenting a loan package to a bank on her behalf. At that time, Harrell was on the board of directors of the bank.

Specifically, Waldrip complains of the following exchange that took place at trial:

> GOVERNMENT: And Mrs. Waldrip, you know that that's bank bribery? That's a federal crime?
>
> WALDRIP: No. It isn't because any board director can present a project and sponsor someone in there. They just are not allowed to vote on the loan being approved, and Mr. Harrell did not vote on my project in that board meeting.

Waldrip did not object to this line of questioning until the government attempted to read the elements of bank bribery from the United States Code. Waldrip's objection consisted of the following exchange:

> WALDRIP: May it please the court, your honor. I object to this line of questioning of the witness. She's not a lawyer, number one. The government is--if the government had a case and thought that she had committed some crime--this alludes to a period of time four years ago.

Waldrip did not timely and specifically object to the introduction of the bribery evidence. Federal Rule of Evidence 103(a)(1) requires a "timely objection or motion to strike . . . stating the specific ground of objection, if the specific ground is not apparent from the context. . . . " A trial court judge must be fully apprised of the grounds of an objection. United States v. Jimenez Lopez, 873 F.2d 769, 773 (5th Cir. 1989). A loosely

9

formulated and imprecise objection will not preserve error.  <u>Id.</u>
We would stretch too far to find a specific objection here.  The
objection was not made, and the issue is not before us on appeal,
therefore, this court should review admission of the evidence for
plain error. <u>United States v. Martinez</u>, 962 F.2d 1161, 1166 (5th
Cir. 1992).

Waldrip attempts to show that the court committed plain error
because bank bribery is not probative of her character for
truthfulness, citing <u>United States v. Rosa</u>, 891 F.2d 1063 (3rd Cir.
1989).  In <u>Rosa</u>, the court stated that "bribery, however, is not
the kind of conduct which bears on truthfulness or untruthfulness.
Moreover, even if we regarded bribery as minimally probative of
those matters . . . we could not say that the trial judge abused
its discretion in limiting cross-examination with respect . . . to
bribery."  On the other hand, in <u>United States v. Hurst</u>, 951 F.2d
1490, 1500-01 (6th Cir.), <u>cert. denied</u>, 112 S. Ct. 1952 (1992), the
court held that the trial court did not abuse its discretion in
concluding that the defendant's misconduct in attempting to bribe
a police officer was probative of truthfulness.  The court went on
to state "[t]o the extent that . . . <u>Rosa</u> . . ., might be read to
suggest that bribery-related offenses are not probative of a
witness' truthfulness in all cases, we disagree."

Plain error is an error so obvious that failure to notice it
would seriously affect the fairness, integrity, or public
reputation of the judicial proceedings and results in a miscarriage
of justice.  <u>Martinez</u>, 962 F.2d at 1166 n. 10.  We agree with the

10

Fourth and Sixth Circuits that bribery is probative of truthfulness. <u>See</u>, <u>Hurst</u>, 951 F.2d at 1500-01; <u>Leake</u>, 642 F.2d at 718-19. Waldrip has not shown how the admission of the bribery evidence affected the fairness of the judicial proceedings or would result in a miscarriage of justice. Thus, we do not find plain error. <u>Cf</u>, <u>Martinez</u>, 962 F.2d at 1166 (holding that no plain error occurred when district court allowed admission of extrinsic evidence that defense witness was gang member to show bias).

   3. **Limiting Instruction**

Waldrip contends that the district court erred by not giving a limiting instruction to the jury informing them that the evidence of the Hill letter and the bank bribery could be used only to impeach Waldrip's character for truthfulness and could not be used as evidence of Waldrip's guilt. Since Waldrip did not request a limiting instruction, the question, therefore, is whether the district court committed plain error in failing <u>sua sponte</u> to give the instruction. <u>See</u>, <u>United States v. Prati</u>, 861 F.2d 82, 86 (5th Cir. 1988); <u>United States v. Barnes</u>, 586 F.2d 1052, 1058 (5th Cir. 1978); <u>United States v. Diaz</u>, 585 F.2d 116, 117 (5th Cir. 1978). Under the plain error standard, the defendant "must demonstrate that the charge, considered as a whole, is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice." <u>Prati</u>, 861 F.2d at 86, citing <u>United States v. Varkonyi</u>, 645 F.2d 453, 460 (5th Cir. 1981). Our inquiry on appeal is limited to analyzing whether, "the need for the instruction is obvious and the failure to give it so prejudicial as to affect substantial rights

11

of the accused." <u>United States v. Garcia</u>, 530 F.2d 650, 656 (5th Cir. 1976). Waldrip contends that under <u>Diaz</u> the district court committed plain error when it failed to give a limiting instruction, especially when the extrinsic act evidence is very similar to the crimes for which the defendant is charged. In <u>Diaz,</u> this court held that the district court committed plain error in failing to give a limiting instruction when a defendant was questioned about a prior conviction for an offense similar to the offense of which he was charged. 585 F.2d at 117; <u>see also</u> <u>United States v. Garner</u>, 471 F.2d 212, 214-215 (5th Cir. 1972) (full discussion of the controversy concerning impeachment through use of defendant's prior convictions and dilemma defendant faces as to whether to testify on his own behalf). As in <u>Diaz</u>, Waldrip contends that the jury was free to consider the evidence of the Hill letter and the bank bribery as actual evidence of her guilt, not just as evidence of her character for truthfulness.

"Although the <u>Diaz</u> opinion found plain error in the trial judge's failure sua sponte to instruct the jury as to the limited use of evidence of other offenses, it did not establish a <u>per se</u> rule. Just as in the case of impeachment evidence, our inquiry will focus and depend on the particular facts of each case." <u>Barnes</u>, 586 F.2d at 1058 n. 7. "Plain error appears only when the impeaching testimony is extremely damaging, the need for the instruction is obvious, and the failure to give it is so prejudicial as to affect the substantial rights of the accused." <u>Id.</u> at 1058.

12

When the particular facts of this case are examined, we find that unlike Diaz, the trial court did not commit plain error.  In view of the other evidence against Waldrip, the evidence of her previous acts of forgery and bank bribery was not extremely damaging.  The government clearly established all the elements of the charged offenses.  In addition, the need for a limiting instruction was not obvious.  Counsel may refrain from requesting an instruction in order not to emphasize potentially damaging evidence, and for other strategic reasons.  Barnes, 586 F.2d at 1059.  Finally, although we cannot fairly say that the evidence of prior conduct was not damaging, it was not so damaging as to require us to reverse on the basis of plain error.

Although the district court should have cautioned the jury to consider the extrinsic act evidence only as it related to Waldrip's character for truthfulness, it did warn the jury

> The defendant is not on trial for any act, conduct or offense not alleged in the superseding indictment.

Record Vol. 11 at 23.  We are therefore unable to conclude that the district court's jury instructions were so deficient that they significantly prejudiced Waldrip's rights.  While it is a better practice for the court to give a limiting instruction at the time the prejudicial evidence is introduced, no reversible error exists here when the court gives a cautionary instruction in its general charge.  See, United States v. Prati, 861 F.2d 82, 86 (5th Cir. 1988).

13

4. **Exclusion of Loss Evidence**

Waldrip contends that the district court erred in refusing to allow her to introduce evidence that she and other investors in the Project sued the bank, and as a result of that suit, received a favorable settlement. At trial, the government introduced evidence that the banks had sustained losses as a result of Waldrip's actions. TCB claimed a $59,200 loss and FIB claimed a loss of over $80,000. Additionally, the banks claimed losses for costs incurred in clearing title to the property as a result of Waldrip's actions.

Loss need not be proven to convict a defendant for bank fraud or making a false statement to a bank and evidence that there was no loss is not a defense to either of those crimes. See United States v. Lemons, 941 F.2d 309, 315-16 (5th Cir. 1991), United States v. Trexler, 474 F.2d 369, 372 (5th Cir.), cert. denied, 412 U.S. 929 (1973). At trial, after the government introduced evidence that the banks had sustained losses, Waldrip sought to introduce evidence that she and other investors sued the banks in civil court and received a favorable settlement. The district court, however, refused to allow Waldrip to present such evidence.

Waldrip contends that the district court erred in excluding the evidence for three reasons. First, Waldrip contends that the evidence directly refutes the government's assertions that Waldrip was responsible for loss in this case. Waldrip contends that this evidence shows that even without her conduct, the banks would have lost the same amount on the Harrell lots. While this is not a defense to the action, Waldrip contends that it is admissible to

14

refute the false impression created by the government that Waldrip caused a loss. Second, Waldrip contends that the evidence impugns the credibility of the bank officials, who told the jurors that Waldrip was the cause of loss to the banks. Third, Waldrip contends that it corroborates her explanation that she believed she had not done anything inappropriate.

The district court was correct in refusing to admit evidence of the settlement because the evidence was not relevant to the offenses charged. The trial judge has broad discretion in ruling on questions of relevancy. Hamling v. United States, 418 U.S. 87, 124-25, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974). Federal Rule of Evidence 401 states that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Implicit in that definition are two distinct requirements: (1) the evidence must tend to prove the matter sought to be proved; and (2) the matter sought to be proved must be one that is of consequence to the determination of the action. United States v. Hall, 653 F.2d 1002, 1005 (5th Cir. 1981). Moreover, the matter sought to be proved must be part of the hypothesis governing the case. In a criminal case, the governing hypothesis consists of the elements of the offense charged and the relevant defenses (if any) raised to defeat criminal liability. Id. The evidence regarding the settlement agreement reached between the bank and the investors is relevant only to the issue of loss and the amount of loss. Because loss

15

need not be proven to convict a defendant for bank fraud or making a false statement to a bank, the district court correctly determined that the evidence was not relevant. Moreover, the settlement agreement is not relevant to Waldrip's good faith defense that she believed that she had the authority to sign the loan documents.

AFFIRMED