**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 27, 2009

Charles R. Fulbruge III
Clerk

No. 07-20684

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

IGBANIBO C. NATHAN

Defendant-Appellant

-------------------------------------------------------------------------------------------------------------

Consolidated with
No. 07-20936

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

YERISOIBI FLORENCE HAMILTON

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:05-CR-226-7
USDC No. 4:05-CR-226-6

Before JONES, Chief Judge, and WIENER and BENAVIDES, Circuit Judges.

EDITH H. JONES, Chief Judge:[*]

Igbanibo Nathan and Yerisoibi Hamilton were convicted of multiple counts of bank fraud and money laundering in connection with a land flip scheme.[1] *See United States v. Sallee*, 984 F.2d 643, 644 n.1 (5th Cir. 1993) (providing a detailed example and explanation of a generic land flip scheme). Hamilton and Nathan were the escrow agent and the "hard money" lender, respectively, for this land flip. The district court sentenced Nathan to sixty months imprisonment and three years supervised release. Hamilton was sentenced to ninety-six months imprisonment and five years supervised release. They now appeal their convictions, and Nathan appeals his sentence. For the reasons stated below, we AFFIRM.

Nathan and Hamilton both acknowledge that their services were used in a scheme to defraud Banco Popular. They argue, however, that the Government did not prove that they had the knowledge and specific intent to commit the bank fraud and money laundering counts with which they were charged. Sufficiency of the evidence supporting a conviction is viewed in the light most favorable to the jury verdict, and this court determines only whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Sprick*, 233 F.3d 845, 852 (5th Cir. 2000) (internal quotation marks omitted). At trial, the Government introduced evidence that Hamilton had altered documents during the closing, that Nathan

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Land flip schemes are not *per se* illegal but are commonly used to further other types of fraud or illegality. *See United States v. Luffred*, 911 F.2d 1011, 1013 (5th Cir. 1990).

had instructed lenders to make out checks to a third party, that both appellants had been involved with similar transactions in the past, and that Appellants profited from the disbursement of escrow funds at closing to their jointly-owned companies. Based on the strength and nature of this and other circumstantial evidence described in the record, it was reasonable for the jury to infer that Appellants knew of and had the specific intent to commit the charged crimes.

Nathan and Hamilton also object to the "deliberate ignorance" instruction given to the jury, arguing that it did not require the jury to find that both of them possessed subjective awareness of the illegality. Because they did not object at trial, this court reviews for plain error. The instruction allowed the jury to find that the defendants had knowledge if jurors found that "the defendant deliberately closed his eyes to what would otherwise have been obvious to him" or "deliberately blinded himself to the existence of a fact." This court has noted that these types of instructions should rarely be given, but can be justified where "a defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference." *United States v. Bieganowski*, 313 F.3d 264, 289 (5th Cir. 2002) (internal quotation marks omitted). Given the facts presented at trial, including the evidence that Appellants had participated in other similarly-executed land flip transactions, the Appellants cannot establish that the court's use of this instruction was a marked departure from our past cases. *See, e.g.*, *United States v. Lara-Velasquez*, 919 F.2d 946, 952 (5th Cir. 1990).

Nathan appeals the admission of evidence and the prosecutor's closing argument regarding his immigration status. Because Nathan did not request a limiting instruction or object, we review for plain error only. Nathan had the burden of establishing that allegedly improper remarks in the closing argument were substantial and cast serious doubt on the correctness of the jury's verdict.

*United States v. Mares*, 402 F.3d 511, 515 (5th Cir. 2005) (citing *United States v. Virgen-Moreno*, 265 F.3d 276, 290 (5th Cir. 2001)). Nathan also had to show that improper evidence was introduced and that "the need for [a limiting] instruction [was] obvious and the failure to give it [was] so prejudicial as to affect substantial rights of the accused." *United States v. Waldrip*, 981 F.2d 799, 805 (5th Cir. 1993) (internal quotation marks omitted). On direct examination, Nathan described his marriage and reasons for coming to the United States. Hamilton and Nathan were both natives of Nigeria, married each other in the late 1970s, came to the United States in 1982, divorced in 1994, remarried American citizens, divorced those citizens in 2000 or 2001, gained American citizenship in 2001, and remarried one another in 2001. Even while divorced, they continued to have a close relationship. Nathan worked down the hall from Hamilton, co-owned two businesses with her, and recommended her to be the escrow agent for this transaction. The relationship between Nathan and Hamilton, therefore, was central to the question whether they had knowledge of the conspiracy, and any error was invited by Nathan's statements on direct examination. *See United States v. Tullos*, 868 F.2d 689 (5th Cir. 1989).

Finally, Nathan argues that the district court erred when it assessed the loss for sentencing purposes using the purchase price of the collateral in 1998 instead of a 2000 bank appraisal. He did not object at the time of sentencing and therefore, this court reviews for plain error. The Application Note 3(E)(ii) to U.S.S.G. § 2B1.1 states that any loss amount shall be reduced by "the fair market value of the collateral at the time of sentencing" if the collateral has not been disposed of by that time. At the time of sentencing in 2007, there is no evidence that the property had been sold and no current appraisal was presented.

Under plain error review, the error must be obvious and "evident from a plain reading of the statute." *See United States v. Aderholt*, 87 F.3d 740, 744 (5th Cir. 1996). Assuming that the district court incorrectly used the 1998 purchase price instead of the 2000 appraisal, the error was not clear and obvious. Neither side points to any further guidance in the text of the Guidelines or any precedent that states whether a more recent figure is preferable when a current appraisal is not available. We have said, however, that where "the district court cannot achieve absolute certainty in determining the lenders' losses . . . '[t]he court need only make a reasonable estimate of the loss.'" *United States v. Goss*, 549 F.3d 1013, 1019 (5th Cir. 2008) (quoting *United States v. Holbrook*, 499 F.3d 466, 468 (5th Cir. 2007)) (matching the language of both U.S.S.G. 2B1.1 app. n.2(C) (2001) and U.S.S.G. 2B1.1 app. n.3(C) (2007)). Because the 1998 purchase price was a reasonable estimate of the property's value when no appraisal contemporaneous or near to the date of sentencing was available, the district court's application of U.S.S.G. 2B1.1 was not plainly wrong.

For the foregoing reasons, the judgments and sentences imposed by the district court are **AFFIRMED**.